UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SALESFORCE.COM, INC.,<br><br>Plaintiff,<br><br>v.<br><br>GEA, INC.,<br><br>Defendant. | Case No. 19-cv-01710-JST<br><br>**ORDER HOLDING IN ABEYANCE MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE**<br><br>Re: ECF No. 18 |

Before the Court is Defendant GEA, Inc.'s motion to dismiss for lack of personal jurisdiction and improper venue. ECF No. 18. For the reasons that follow, the Court will hold the motion in abeyance and authorize jurisdictional discovery.

## I.   BACKGROUND

Plaintiff Salesforce.com, Inc. ("Salesforce") operates a customer relationship management platform that allows entities to manage their sales, service, marketing, and commerce functions, among others. Complaint ("Compl."), ECF No. 1 ¶ 9. Salesforce licenses the platform to its customers, who each designate one or more administrators for their account. *Id.* ¶¶ 9, 11.

GEA is a Nevada corporation that operates as a "holding company that licenses the intellectual property associated with Grand Estates Auction Company, a luxury residential auction company." ECF No. 18-1 ¶ 3. In 2014, GEA created a Salesforce account by submitting an Order Form and assenting to the Master Subscription Agreement ("MSA"). Compl. ¶ 12.[1] GEA

---

[1] With its complaint, Salesforce attached a record reflecting that Scott Kirk assented to the terms of use on April 30, 2014, but it is unclear precisely what documents were signed at the time. ECF No. 1-1 at 2. GEA maintains that Salesforce did not independently provide the MSA, but GEA does not dispute for the purposes of this motion that the MSA was incorporated into the parties' agreement. ECF No. 21 at 9 & n.2.

renewed its account via a new Order Form on July 6, 2016. ECF No. 1-1 at 3-7.

The MSA provides that "[b]y accepting this Agreement, either by clicking a box indicating your acceptance or by executing an order form that references this Agreement, you agree to the terms of this Agreement." *Id.* at 8. The MSA further states that "[i]t is effective between [Salesforce] and [the customer] as of the date of [the customer] accepting this Agreement." *Id.*

Section 13 of the MSA concerns the governing law and jurisdiction for "any lawsuit arising out of or in connection with this Agreement." *Id.* at 14. For U.S. customers, section 13.1 provides that "[t]he governing law is . . . California and controlling United States federal law." *Id.* In addition, "[t]he courts having exclusive jurisdiction are . . . San Francisco, California, U.S.A." *Id.* Section 13.3 reiterates that "[e]ach party agrees to the applicable governing law above without regard to choice or conflicts of law rules, and to the exclusive jurisdiction of the applicable courts above." *Id.* at 15.

In 2016, GEA became embroiled in a dispute with one of its sales representatives, Jeremey LeClair. ECF No. 18-1 ¶¶ 8-14. As part of that dispute, GEA alleges, LeClair used his administrator access to gain sole control over GEA's account with Salesforce and transferred GEA's database into a new account. *Id.* ¶¶ 11-14. GEA sued LeClair in North Carolina state court. Compl. ¶ 13.

Salesforce alleges that, in September 2018, GEA's counsel informed Salesforce that GEA would attempt to hold Salesforce liable for damages suffered due to LeClair's manipulation of the account. *Id.* ¶ 17. GEA contended that Salesforce employees had improperly performed various actions with regard to GEA's account, at LeClair's request. *Id.* GEA stated that it would seek at least $800,000,000.00 in damages, fees, and costs for the harm to its business. *Id.*

On April 2, 2019, Salesforce filed this declaratory judgment action, seeking a declaration that it (1) was not liable for the account modifications and (2) did not breach the parties' agreement. ECF No. 1. On May 30, 2019, GEA filed this motion to dismiss for lack of personal jurisdiction and improper venue. ECF No. 18.[2]

---

[2] In its reply, GEA withdrew its alternative request to transfer venue under 28 U.S.C. § 1404(a). ECF No. 21 at 17 n.5.

## II.    LEGAL STANDARD

### A.    Rule 12(b)(2)

In contesting a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of demonstrating personal jurisdiction. *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006). But where the "motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011). Further, "[c]onflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor." *In re Boon Glob. Ltd.*, 923 F.3d 643, 650 (9th Cir. 2019).

### B.    Rule 12(b)(3)

Similarly, "[o]nce the defendant has challenged the propriety of venue in a given court, the plaintiff bears the burden of showing that venue is proper." *Autodesk, Inc. v. Kobayashi + Zedda Architects Ltd.*, 191 F. Supp. 3d 1007, 1020 (N.D. Cal. 2016) (citing *Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979)). In evaluating a Rule 12(b)(3) motion to dismiss for improper venue, the "pleadings need not be accepted as true, and facts outside the pleadings may be considered." *Doe 1 v. AOL LLC*, 552 F.3d 1077, 1081 (9th Cir. 2009) (per curiam).

## III.    DISCUSSION

### A.    Personal Jurisdiction

Salesforce responds to GEA's motion by asserting two bases for personal jurisdiction: (1) specific jurisdiction and (2) consent via the MSA's forum selection clause.

#### 1.    Legal Standard

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014). In particular, where "no federal statute authorizes personal jurisdiction, the district court applies the law of the state in which the court sits." *Mavrix Photo*, 647 F.3d at 1223 (citing Fed. R. Civ. P. 4(k)(1)(A)). As relevant here, "California's long-arm statute allows the exercise of personal jurisdiction to the full extent permissible under the U.S. Constitution." *Daimler AG*, 571 U.S. at 125; *see also* Cal. Code

Civ. Proc. § 410.10 ("A court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States."). And because that "statute is coextensive with federal due process requirements, the jurisdictional analyses under state law and federal due process are the same." *In re Boon*, 923 F.3d at 650 (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800-01 (9th Cir. 2004)).

The due process inquiry generally "requires that each party 'have certain minimum contacts' with the forum state 'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). "The strength of contacts required depends on which of the two categories of personal jurisdiction a litigant invokes: specific jurisdiction or general jurisdiction." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015). "A court with general jurisdiction may hear *any* claim against that defendant, even if all the incidents underlying the claim occurred in a different State." *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1780 (2017) (emphasis in original). General jurisdiction over a corporation is appropriate only when the corporation's contacts with the forum state "are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Daimler AG*, 571 U.S. at 127 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). Salesforce does not argue that the Court has general jurisdiction over GEA.

"Specific jurisdiction is very different." *Bristol-Myers*, 137 S. Ct. at 1780. In order for the court to exercise specific jurisdiction, the *suit* must arise out of or relate to the defendant's contacts with the *forum*. *Id.* "In other words, there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'" *Id.* (quoting *Goodyear,* 564 U.S. at 919). Accordingly, "specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Goodyear,* 564 U.S. at 919.

Alternatively, "[c]onsent is considered as one of four traditional bases for the exercise of personal jurisdiction over a nonresident defendant and . . . is separate from the 'minimum contacts' analysis." *Nobel Floral, Inc. v. Pasero*, 106 Cal. App. 4th 654, 658 (2003); *see also J.*

4

*McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 880 (2011).

## 2.    Specific Jurisdiction

### a.    Purposeful Availment

The Ninth Circuit has established a three-part test for analyzing a claim of specific

personal jurisdiction:

> (1) The non-resident defendant must purposefully direct his
> activities or consummate some transaction with the forum or
> resident thereof; or perform some act by which he purposefully
> avails himself of the privilege of conducting activities in the forum,
> thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the
> defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and
> substantial justice, i.e. it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802 (quoting *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)).

Courts apply a two-step burden-shifting analysis:   "The plaintiff bears the burden on the first two

prongs.  If the plaintiff establishes both prongs one and two, the defendant must come forward

with a 'compelling case' that the exercise of jurisdiction would not be reasonable." *Boschetto v.*

*Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008) (citation omitted).

"For claims sounding in contract, a purposeful availment test is used [for the first prong];

for claims sounding in tort a purposeful direction test is used." *In re Boon*, 923 F.3d at 651.  Here,

the parties appear to agree that a purposeful availment test is appropriate for Salesforce's

declaratory judgment claims, which are rooted in the parties' contract.  ECF No. 20 at 14; ECF

No. 21 at 5; *see also Netgear, Inc. v. Redzone Wireless, LLC*, No. 16-cv-06974-BLF, 2017 WL

2351359, at *2 (N.D. Cal. May 31, 2017) ("A claim for declaratory judgment as to the terms of a

contract is an action sounding in contract."); *Dynamic Software Servs. v. Cyberbest Tech., Inc.*,

No. 13-cv-04217-DMR, 2014 WL 3373924, at *7 (N.D. Cal. July 9, 2014) (applying purposeful

availment where "Defendant's alleged breach of contract forms the factual basis for all of

Plaintiff's claims," even if one claim could "be classified as a tort").

Under the purposeful availment prong, it is well established that "the formation of a

contract with a nonresident defendant is not, standing alone, sufficient to create jurisdiction."

*Boschetto*, 539 F.3d at 1017 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985)). Rather, courts must take "a highly realistic approach that recognizes that a contract is ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction." *Burger King*, 471 U.S. at 479 (internal quotation marks and citation omitted). Relevant factors include "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Picot v. Weston*, 780 F.3d 1206, 1212 (9th Cir. 2015) (quoting *Burger King*, 471 U.S. at 479).

### b.     Discussion

Here, Salesforce invokes solely the second and third factors of those just listed. ECF No. 20 at 14.[3] Of these, Salesforce primarily relies on the second factor – the future consequences contemplated by the parties' agreement. ECF No. 20 at 14. The key question under this factor is whether the agreement "create[d] continuing relationships and obligations." *Burger King*, 471 U.S. at 473 (citation omitted). A contract that "creates a continuous course of dealing [is] distinguishable from an agreement after which the seller and purchaser go their separate ways." *Sustainable Ranching Partners, Inc. v. Bering Pac. Ranches Ltd.*, No. 17-CV-02323-JST, 2017 WL 4805576, at *5 (N.D. Cal. Oct. 24, 2017). But while "the lone transaction for the sale of one item" does not establish purposeful availment, *Boschetto*, 539 F.3d at 1017, not every contract that creates obligations of some longer duration satisfies this factor. In *Burger King*, the Supreme Court relied on a franchisee's "carefully structured 20-year relationship that envisioned continuing and wide-reaching contacts" with the franchisor, emphasizing the franchisee's "voluntary acceptance of the long-term and exacting regulation of his business from Burger King's Miami headquarters." 471 U.S. at 480. By contrast, courts have found that the obligations flowing from a contract "governing the placement of only a single employee for six months," *Dynamic Software*

---

[3] There is no evidence of any relevant prior negotiations between the parties. The general terms of the MSA indicate that it is a form agreement included with all similar Salesforce contracts, *see* ECF No. 1-1 at 8-9, and the order forms appear to be minimally customized to GEA's order, *see id.* at 4-8. Nor does Salesforce identify specific acts from the parties' actual course of dealing that weigh in its favor.

*Servs.*, 2014 WL 3373924, at *8, or "to provide limited technical support" regarding the goods exchanged, do "does not rise to the level of the wide-ranging future consequences present in *Burger King*," *Nimbus Data Sys., Inc. v. Modus LLC*, No. 14-cv-04192-NC, 2014 WL 7387200, at *5 (N.D. Cal. Dec. 29, 2014).

Here, the parties' contract provided GEA access to Salesforce's platform for a period of roughly two years, which the parties subsequently renewed once before this dispute arose. Compl. ¶¶ 11-13. Unlike a sale of physical goods, the license required GEA to remotely access Salesforce's platform in order to make use of the product. The parties thus did not simply "go their separate ways" after executing the agreement. *Sustainable Ranching Partners*, 2017 WL 4805576, at *5. In addition to ongoing access, the MSA required Salesforce to provide technical support and take certain precautions to protect GEA's data. ECF No. 1-1 at 9-10. The MSA also imposed corresponding restrictions on GEA's use of the platform. *Id.* at 10-12. These obligations exceed "limited technical support" for physical equipment. *Nimbus Data Sys.*, 2014 WL 7387200, at *5. At the same time, they are rather unlike "exacting regulation" imposed by a franchise agreement. *Burger King*, 471 U.S. at 480. GEA did not subject itself to any restrictions in the conduct of its business beyond conditions on the use of the Salesforce platform. Nor does it appear that GEA collaborated extensively with Salesforce in making use of the platform. *Cf. LocusPoint Networks, LLC v. D.T.V., LLC*, No. 3:14-CV-01278-JSC, 2014 WL 3836792, at *6 (N.D. Cal. Aug. 1, 2014) (relying on "contractual obligations [that] produced months of substantial coordination and joint effort to prepare Defendant's FCC license for renewal"); *Juniper Networks, Inc. v. Altitude Capital Partners, L.P.*, No. 09-cv-03449-JSW, 2010 WL 5141839, at *5 (N.D. Cal. Dec. 13, 2010) (finding that "SRH's contacts with California were not random, fortuitous, or attenuated" where "the contacts between SRH and ESR [we]re not one-time incidents, but rather long-term collaborations pursuant to which representatives of SRH and ESR 'participate[d] in weekly calls' with each other" and SRH exercised "substantial control of ESR").

Salesforce's lone authority on this point is unhelpful. In *Twitter, Inc. v. Skootle Corp.*, the court considered the conduct of a Twitter user who allegedly violated Twitter's terms of service by repeated spamming other users and extracting payments from them under false pretenses. No. 12-

cv-1721-SI, 2012 WL 2375486, at \*2 (N.D. Cal. June 22, 2012). Although the *Twitter* court used the phrase "purposeful availment," *id.* at \*5, it relied on a purposeful direction analysis, looking at whether the defendant "(1) committed an intentional act, which was (2) expressly aimed at the forum state, and (3) caused harm, the brunt of which is suffered and which the defendant knows is likely to be suffered in the forum state," *id.* (citing *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006)). The court therefore did not consider the scope of the obligations assumed by Twitter and its users, focusing instead on the defendant's targeting of other users and the harm that was inflicted in suffered in the forum state. *Id.*[4] *Twitter* does not answer the question whether merely contracting for account-based services provided online constitutes purposeful availment of the service provider's home state.

Given the limited obligations here, the Court concludes that this factor weighs only slightly in favor of purposeful availment. To give this factor significant weight would be to suggest that a defendant subjects itself to personal jurisdiction in every service-based vendor's home state. The Court doubts that either the cases or good public policy support that result.

Salesforce's remaining source of support is the MSA's California choice of law provision. ECF No. 20 at 14. In *Burger King*, the Supreme Court cautioned that "such a provision standing alone would be insufficient to confer jurisdiction," but reasoned that "when combined with the 20-year interdependent relationship [defendant] established with Burger King's Miami headquarters, it reinforced his deliberate affiliation with the forum State and the reasonable foreseeability of possible litigation there." 471 U.S. at 482. As noted above, the relationship into which GEA entered was for a far shorter interval and not nearly as interdependent. Courts have also raised questions whether a form agreement's choice of law provision, particularly when incorporated by reference, supports the same inference. *See Nimbus Data Sys.*, 2014 WL 7387200, at \*6 (noting a lack of evidence that defendant "was even aware of the arbitration and choice-of-law provisions before or at the time it entered into the contract to purchase the products").

---

[4] The other cases on which the *Twitter* court relied likewise applied a purposeful direction test to a defendant's misuse of an internet-based account. *See Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1053-54 (N.D. Cal. 2010); *eBay Inc. v. Digital Point Sols., Inc.*, 608 F. Supp. 2d 1156, 1162 (N.D. Cal. 2009).

United States District Court
Northern District of California

Considering the relatively weak showing on these two factors, in conjunction with the lack of support from any other factor, the Court concludes that Salesforce has failed to make a prima facie showing of purposeful availment. Accordingly, the Court need not reach the remaining factors.

### 3. Consent

The Court thus turns to Salesforce's primary argument that GEA consented to jurisdiction by agreeing to the MSA's forum selection clause. The parties dispute whether that clause is enforceable as a means of obtaining personal jurisdiction.[5] As set forth below, courts most often address this question in a different posture – one in which (1) the contract designates a forum other than the court (i.e., an "outbound" forum selection clause)[6] and (2) a party seeks to enforce that clause by way of a motion to transfer or dismiss for forum non conveniens. Here, by contrast, Salesforce seeks to enforce the clause to keep the lawsuit in the forum chosen by the contract (i.e., an "inbound" clause). In order to address the parties' arguments regarding how this distinction impacts the analysis, the Court first reviews the law governing the more common outbound situation.

### a. Outbound Forum Selection Clauses

Depending on the type of forum selected, an outbound forum selection clause may be enforced through a motion to transfer venue or a motion to dismiss for forum non conveniens. A motion to transfer venue under 28 U.S.C. § 1404(a) "provides a mechanism for enforcement of forum-selection clauses that point to a particular federal district." *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 59 (2013). Because Congress has prescribed in that

---

[5] The parties do not contest whether the claims fall within the clause's scope or whether the clause's reference to San Francisco, California includes this Court. *Cf. Simonoff v. Expedia, Inc.*, 643 F.3d 1202, 1206 (9th Cir. 2011) ("[A] forum selection clause that vests 'exclusive jurisdiction and venue' in the courts 'in' a county provides venue in the state and federal courts located in that county.").

[6] Other courts have likewise used this shorthand to distinguish the two situations. "An 'outbound' forum selection clause is one providing for trial outside of [the state where suit is brought], while an 'inbound' clause provides for trial inside [that state]." *Prof'l Ins. Corp. v. Sutherland*, 700 So. 2d 347, 348 (Ala. 1997); *see also High Life Sales Co. v. Brown-Forman Corp.*, 823 S.W.2d 493, 495 (Mo. 1992).

statute the factors that the district court must consider, federal law controls the analysis of the motion. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29-32 (1988). Similarly, "the appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of forum non conveniens." *Atl. Marine*, 571 U.S. at 60. "And because both § 1404(a) and the forum non conveniens doctrine from which it derives entail the same balancing-of-interests standard, courts should evaluate a forum-selection clause pointing to a nonfederal forum in the same way that they evaluate a forum-selection clause pointing to a federal forum." *Id.* at 61.

The Supreme Court has instructed that a valid outbound clause requires courts to modify the balance of the factors in three ways. *Id.* at 63. First, courts give the plaintiff's choice of forum no weight, instead placing on the plaintiff "the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Id.* Second, courts must treat "the private-interest factors" as "weigh[ing] entirely in favor of the preselected forum." *Id.* at 64. Finally, "when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules – a factor that in some circumstances may affect public-interest considerations." *Id.* As a result of the first two factors, the *Atlantic Marine* Court explained, "the practical result is that forum-selection clauses should control except in unusual cases." *Id.*

The Ninth Circuit subsequently observed that "*Atlantic Marine* provides little guidance . . . regarding what constitutes an 'exceptional reason' or 'extraordinary circumstances' in which courts should not give controlling weight to a valid forum-selection clause." *Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1088 (9th Cir. 2018). The court therefore turned to an earlier Supreme Court case decided under admiralty law. *Id.* (citing *Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972)). In *Bremen*, the Supreme Court vacated the lower courts' refusal to enforce a forum selection clause designating a London court as the exclusive forum. *Bremen*, 407 U.S. at 2. In so doing, the Supreme Court "conclude[d] that the forum clause should control absent a strong showing that it should be set aside," and articulating various reasons that might suffice. *Id.* at 15.

Relying on *Bremen*, the Ninth Circuit distilled three exceptions to the enforceability of

10

forum selection clauses, requiring the plaintiff to make "a strong showing that: (1) the clause is invalid due to 'fraud or overreaching,' (2) 'enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision,' or (3) 'trial in the contractual forum will be so gravely difficult and inconvenient that [the litigant] will for all practical purposes be deprived of his day in court.'" *Sun*, 901 F.3d at 1088 (quoting *Bremen*, 407 U.S. at 15). As the Ninth Circuit recently confirmed, these are independently sufficient exceptions, such that the "satisfaction of *Bremen*'s public policy factor continues to suffice to render a forum-selection clause unenforceable" without a showing on any other factors. *Gemini Techs., Inc. v. Smith & Wesson Corp.*, -- F.3d --, No. 18-35510, 2019 WL 3311152, at *4 (9th Cir. July 24, 2019); *see also Doe 1*, 552 F.3d at 1083-84.

### b.     Inbound Forum Selection Clauses

In *Burger King Corp.*, the Supreme Court likewise drew on *Bremen* in discussing when a forum selection clause may serve as consent to personal jurisdiction. 471 U.S. at 472 n.14. Although there was no forum selection clause at issue, the *Burger King* Court noted that "there are a variety of legal arrangements by which a litigant may give express or implied consent to the personal jurisdiction of the court." *Id.* (internal quotation marks and citation omitted). "[P]articularly in the commercial context," the Supreme Court continued, parties frequently consent by "stipulat[ing] in advance to submit their controversies for resolution within a particular jurisdiction." *Id.* Pointing to *Bremen*, the Supreme Court stated that "[w]here such forum-selection provisions have been obtained through 'freely negotiated' agreements and are not 'unreasonable and unjust,' their enforcement does not offend [the] due process" protections underlying personal jurisdiction. *Id.* (quoting *Bremen*, 407 U.S. at 15).

Although *Burger King*'s discussion appears to have been dicta, the Ninth Circuit subsequently adopted its language in *Chan v. Society Expeditions, Inc.*, 39 F.3d 1398, 1406 (9th Cir. 1994) ("Where such forum-selection provisions have been obtained through 'freely negotiated' agreements and are not 'unreasonable and unjust,' their enforcement does not offend due process." (quoting *Burger King*, 471 U.S. at 472 n.14)). The *Chan* court did not offer additional guidance on when agreements are unreasonable or unjust, holding only that "a forum

selection clause alone could confer personal jurisdiction," and remanding for the district court to determine whether it did so in that case. *Id.*

### c. Federal or State Law

Here, the parties dispute at length whether federal or state law applies to the enforceability of the forum selection clause. GEA relies on the principle that "the personal jurisdiction of the district courts is determined in diversity cases by reference to the law of the state in which the federal court sits." *Kendall v. Overseas Dev. Corp.*, 700 F.2d 536, 538 (9th Cir. 1983); *see also Mavrix Photo*, 647 F.3d at 1223. Salesforce's opposing position is based on Ninth Circuit precedent holding that "the federal rule announced in *The Bremen* controls enforcement of forum clauses in diversity cases." *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 513 (9th Cir. 1988). However, *Manetti-Farrow* and the cases following it involve motions based on venue, rather than personal jurisdiction. *Id.* at 513; *see also Petersen v. Boeing Co.*, 715 F.3d 276, 280 (9th Cir. 2013) (per curiam) (motion to dismiss for improper venue); *Doe 1*, 552 F.3d at 1083 (motion to dismiss for improper venue); *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 497 (9th Cir. 2000) (motion to dismiss for improper venue or transfer venue); *Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 324 (9th Cir. 1996) (motion to dismiss for improper venue); *Spradlin v. Lear Siegler Mgmt. Servs. Co.*, 926 F.2d 865, 867 (9th Cir. 1991) (dismissal for improper venue); *Shute v. Carnival Cruise Lines*, 897 F.2d 377, 388 (9th Cir. 1990) (motion to dismiss for improper venue or transfer venue), *rev'd on other grounds*, 499 U.S. 585 (1991).[7]

The Court has substantial questions whether *Manetti-Farrow*'s holding applies to the enforcement of a forum selection clause as a basis for personal jurisdiction. First, *Manetti-Farrow* reached that conclusion through an *Erie* analysis based on the federal interests embodied in the venue statute. *See* 858 F.2d at 513. Although the Supreme Court's decision in *Stewart* did not analyze the issue as an *Erie* question, its analysis was similarly grounded in its conclusion that the venue statute, "§ 1404(a) itself controls [the] request to give effect to the parties' contractual

---

[7] Many of these cases predate *Atlantic Marine*'s holding that a forum selection clause designating a different forum does not render venue improper and that a clause designating a non-federal forum should therefore be enforced by a motion to dismiss for forum non conveniens. 571 U.S. at 59-60.

choice of venue." *Stewart Org.*, 487 U.S. at 29. Second, at least two other circuits have concluded that a different rule applies where the forum selection clause is asserted as the basis for personal jurisdiction. *Preferred Capital, Inc. v. Sarasota Kennel Club, Inc.*, 489 F.3d 303, 307 (6th Cir. 2007); *Alexander Proudfoot Co. World Headquarters v. Thayer*, 877 F.2d 912, 917-19 (11th Cir. 1989); *see also* 14D Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 3803.1 (4th ed. 2013) ("[*Preferred Capital*'s] holding is undoubtedly correct, because federal courts routinely assess their personal jurisdiction by reference to state law."); *cf. IFC Credit Corp. v. Aliano Bros. Gen. Contractors*, 437 F.3d 606, 609, 611-12 (7th Cir. 2006) (discussing possibility that personal jurisdiction might require application of state law, but not deciding because result would be the same under either approach). Notably, *Manetti-Farrow* drew its entire *Erie* analysis from an Eleventh Circuit decision, 858 F.3d at 513 (citing *Stewart Org., Inc. v. Ricoh Corp.*, 810 F.2d 1066, 1068 (11th Cir. 1987) (en banc) (per curiam), *aff'd on other grounds*, 487 U.S. 22 (1988)), and the Eleventh Circuit has since applied state law where personal jurisdiction is at issue, *Alexander Proudfoot*, 877 F.2d at 919.[8]

Although the reasoning of these other circuits has some force, the Court need not decide the issue here. As an initial matter, it is not clear that the analysis would be any different were the Court to conclude that state law controlled. As explained above, California's long-arm statute "is coextensive with federal due process requirements" and therefore "the jurisdictional analyses under state law and federal due process are the same." *In re Boon Glob.*, 923 F.3d at 650 (quoting *Schwarzenegger*, 374 F.3d at 800-01). Because the touchstone of this merged analysis is constitutional due process, the Ninth Circuit has explained that "federal law is controlling on the issue" whether the exercise of personal jurisdiction satisfies California's long-arm statute. *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1286 n.3 (9th Cir. 1977). Accordingly, the Ninth Circuit explained that it was "not bound by state cases, although they may be considered persuasive authority." *Id.* Following this principle, this Court has concluded that it must follow

---

[8] The Court is aware of one court in this district relying on *Manetti-Farrow* in resolving a similar personal jurisdiction question, but that court does not appear to have considered the potential distinctions in this posture. *See Prod. & Ventures Int'l v. Axus Stationary (Shanghai) Ltd.*, No. 16-cv-00669-YGR, 2017 WL 201703, at *4 (N.D. Cal. Jan. 18, 2017).

United States District Court
Northern District of California

"the Ninth Circuit's clear articulation of the specific jurisdiction test" rather than the California Supreme Court's more lenient approach on that aspect of personal jurisdiction. *Sullivan v. Ford Motor Co.*, No. 16-cv-03505-JST, 2016 WL 6520174, at *3 (N.D. Cal. Nov. 3, 2016).

Further, even if the Court would defer to the California courts in this context, the parties have not identified any material differences in how California courts would resolve this issue.[9] Finally, for the reasons explained below, GEA's legal argument prevails even under the federal law approach that Salesforce advocates.

### d. Contravention of Public Policy

GEA's primary contention is that enforcing the forum selection clause as a basis for personal jurisdiction would contravene the strong public policy of North Carolina, as declared by North Carolina General Statutes section 22B-3. ECF No. 21 at 9-16. Section 22B-3 provides, with some exceptions not relevant here, that "any provision in a contract entered into in North Carolina that requires the prosecution of any action or the arbitration of any dispute that arises from the contract to be instituted or heard in another state is against public policy and is void and unenforceable." N.C. Gen. Stat. Ann. § 22B-3. Salesforce raises a number of arguments in response.

### i. Consideration of Section 22B-3

The Court first considers Salesforce's threshold objection that "the public policy of a *non-forum* state is not one of the enumerated grounds for non-enforcement." ECF No. 20 at 11 (emphasis in original). Salesforce's argument appears to be based on the formulation of the public policy exception in *Bremen* and its progeny, which hold that a forum selection clause is unenforceable if "enforcement would contravene a strong public policy of *the forum in which suit is brought*." *Sun*, 901 F.3d at 1088 (emphasis added) (quoting *Bremen*, 407 U.S. at 15). Therefore, the argument goes, only California's public policy is relevant here.

---

[9] Indeed, GEA's primary argument under this theory is that the clause is "contrary to a fundamental policy of [another] state," ECF No. 21 at 10 (quoting Restatement (Second) of Conflict of Laws § 187 (Am. Law. Inst. 1971)). Whether "enforcement would contravene a strong public policy of [another] forum" is likewise a grounds for non-enforcement under federal law. *Gemini Techs.*, -- F.3d --, 2019 WL 3311152, at *2 (citation omitted).

14

*Bremen*, however, involved an outbound forum selection clause, as the suit was brought in federal district court, and the clause required disputes to be heard in England.  571 U.S. at 2, 5. Because the *Bremen* Court did not confront a situation in which the forum in which suit was brought and forum designated by the clause were the same, it does not necessarily follow that *Bremen*'s precise phrasing of the public policy exception applies in the same manner to an inbound clause.

Salesforce does not identify any binding authority considering the issue in this posture, citing only to a single district court case applying Salesforce's logic.  *See Incline Energy, LLC v. Penna Grp., LLC*, 787 F. Supp. 2d 1140, 1145 (D. Nev. 2011), *disagreed with on other grounds by Del Webb Communities, Inc. v. Partington*, 652 F.3d 1145, 1155 n.9 (9th Cir. 2011).  The Court has also identified several other district courts likewise declining to consider the public policy of another state when deciding whether to enforce an inbound forum selection clause.  *See, e.g.*, *Handel's Enters., Inc. v. Schulenburg*, No. 18-cv-508, 2018 WL 3097416, at *3 (N.D. Ohio June 22, 2018); *Saladworks, LLC v. Sottosanto Salads, LLC*, No. 13-cv-3764, 2014 WL 2862241, at *3 (E.D. Pa. June 24, 2014); *HOODZ Int'l, LLC v. Toschiaddi*, No. 11-cv-15106, 2012 WL 883912, at *4 (E.D. Mich. Mar. 14, 2012); *TGI Friday's Inc. v. Great Nw. Rests., Inc.*, 652 F. Supp. 2d 750, 760 (N.D. Tex. 2009).

Respectfully, the Court finds the analysis of these other courts unpersuasive.  In large part, they appear to have simply assumed that the exact wording used in *Bremen* controlled, without regard to the context presented in that case.  *See, e.g.*, *Saladworks*, 2014 WL 2862241, at *3 ("*Bremen* requires a court to examine whether the enforcement of a forum selection clause would contravene a 'strong public policy of the forum in which the suit is brought.'  *Bremen* does not require a court to examine the public policy of the forum in which the suit *could have been brought*." (emphasis in original) (quoting *Bremen*, 407 U.S. at 15); *TGI Friday's*, 652 F. Supp. 2d at 760 ("A choice of forum clause should not be enforced if it 'would contravene a strong public policy of the forum *in which suit is brought*.'" (emphasis in original) (quoting *Bremen*, 407 U.S. at 15)).  But "[t]he language of an opinion is not always to be parsed as though we were dealing with language of a statute," and there are good reasons not to do so here.  *Saldivar v. Sessions*, 877 F.3d

15

812, 817 n.6 (9th Cir. 2017) (quoting *Reiter v. Sonotone Corp.*, 442 U.S. 330, 341 (1979)).

For one, this acontextual reading of *Bremen* is in tension with the Ninth Circuit's description of "the rule of *The Bremen* and its progeny" as a comparative exercise in which "courts consider the application of the laws of otherwise equally situated fora." *Galilea, LLC v. AGCS Marine Ins. Co.*, 879 F.3d 1052, 1060 (9th Cir. 2018). As noted above, the Ninth Circuit has on past occasions found a forum state's public policies sufficient to invalidate a forum selection clause in diversity cases. *See Gemini Techs.*, -- F.3d --, 2019 WL 3311152, at *4; *Doe 1*, 552 F.3d at 1084; *Jones*, 211 F.3d at 498.[10] Salesforce offers no principled justification, beyond the phrasing used in *Bremen*, why a court sitting in diversity should not afford the same consideration to public policies of co-equal states, if those policies are otherwise applicable to the contractual provision. To the contrary, it would seem odd to focus on the policies of the state already designated by the contract, as it is unlikely that the state has a policy against the exercise of its own jurisdiction.

Salesforce's approach also produces arbitrary results and incentivizes forum shopping. The case law regarding a similar California statute is illustrative. California law provides that "[a] provision in a franchise agreement restricting venue to a forum outside this state is void with respect to any claim arising under or relating to a franchise agreement involving a franchise business operating within this state." Cal. Bus. & Prof. Code § 20040.5. In *Jones*, after a California franchisee filed suit in California state court, the franchisor removed the case and then moved to transfer to the Western District of Pennsylvania, as required by the franchise agreement's forum selection clause. 211 F.3d at 496-97. The Ninth Circuit held the clause unenforceable under *Bremen*'s public policy exception, concluding that section 20040.5 "expresses a strong public policy of the State of California to protect California franchisees from the expense, inconvenience, and possible prejudice of litigating in a non-California venue." *Id.* at 498. Because the forum selection clause did not render a California venue improper (under the

---

[10] In *Galilea*, the Ninth Circuit concluded that *Bremen*'s public policy exception did not apply because the case involved "an unequal, hierarchical relationship between federal maritime law and state law." *Galilea*, 879 F.3d at 1060.

Ninth Circuit's pre-*Atlantic Marine* caselaw) and the remaining factors did not favor transfer, the action remained in California. *Id.* at 498-99. Yet that same statute was invoked in some of the district court cases identified above. But because the franchisor filed first outside of California, those courts *declined* to consider section 20040.5, and therefore kept the case – the precise outcome section 20040.5 was designed to prevent. *See, e.g.*, *Handel's*, 2018 WL 3097416, at *3; *Port of Subs, Inc. v. Tahoe Investments, Inc.*, No. 16-cv-00411-LRH (VPC), 2016 WL 6561560, at *3 (D. Nev. Nov. 3, 2016) ("[U]nlike *Jones*, POS brought suit in Nevada."); *HOODZ Int'l*, 2012 WL 883912, at *4; *but see Homewatch Int'l, Inc. v. Pac. Home Care Servs., Inc.*, No. 10-cv-03045-REB-KLM, 2011 WL 1660612, at *3 (D. Colo. May 2, 2011) (finding clause unenforceable based on section 20040.5 without questioning whether California's policy was relevant). Under this scheme, whether California's public policy has any effect rests solely on a race to the courthouse. Regardless of the weight one might traditionally give a plaintiff's choice of forum, that result seems counterintuitive at best.

The same is true here. The Court does not see why the relevance of North Carolina's public policy should turn on which party files suit where, as opposed to turning on whether the agreement itself contravenes the policy. Accordingly, the Court concludes that the *Bremen* public policy exception, as applied to inbound forum selection clauses, may extend to the policies of states other than the forum state designated by the contract.

### ii.     Strong Public Policy

Salesforce next argues, in effect, that North Carolina General Statutes section 22B-3 does not reflect a sufficiently "strong public policy" because federal district courts in North Carolina have nonetheless enforced forum selection clauses. ECF No. 20 at 11-12. The contention is misplaced.

Contrary to Salesforce, these district courts have consistently recognized that section 22B-3 represents "North Carolina's strong public policy against forum-selection clauses." *Sears Contract, Inc. v. Sauer Inc.*, 378 F. Supp. 3d 435, 441 (E.D.N.C. 2019); *see also Scholl v. Sagon RV Supercenter, LLC*, 249 F.R.D. 230, 242 (W.D.N.C. 2008) ("All three [districts within North Carolina] have also found that . . . the North Carolina statute would present a 'strong public

policy' against enforcement of a forum selection clause."). Despite the recognition of the strong public policy, these courts have concluded that "it is not dispositive" of the clause's enforceability, ECF No. 20 at 11, for two reasons, neither of which is applicable here.

First, courts in the Fourth Circuit have taken a different approach to the *Bremen* exceptions. In *Allen v. Lloyd's of London*, the Fourth Circuit stated that "[c]hoice of forum and law provisions may be found unreasonable if (1) their formation was induced by fraud or overreaching; (2) the complaining party 'will for all practical purposes be deprived of his day in court' because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy; or (4) their enforcement would contravene a strong public policy of the forum state." 94 F.3d 923, 928 (4th Cir. 1996) (citation omitted). District courts have concluded that "[t]he *Allen* factors do not represent an elemental test, with the satisfaction of each element being a necessary condition. Rather the factors are just that: factors meant to inform the Court as to the clause's reasonableness." *Turfworthy, LLC v. Dr. Karl Wetekam & Co. KG*, 26 F. Supp. 3d 496, 507 (M.D.N.C. 2014) (quoting *Gita Sports Ltd. v. SG Sensortechnik GmbH & Co. KG*, 560 F. Supp. 2d 432, 440 (W.D.N.C. 2008)). In contrast to that balancing approach, a strong public policy is an independently sufficient ground to invalidate a forum selection clause under Ninth Circuit precedent, as the Ninth Circuit very recently reaffirmed. *See Gemini Techs.*, -- F.3d --, 2019 WL 3311152, at *4.

Second, district courts stating that section 22B-3 is not dispositive have done so in the context of motions to transfer (or dismiss for forum non conveniens) out of North Carolina. In so doing, they have also relied on the Supreme Court's decision in *Stewart* to conclude that whether "a forum selection clause violated the public policy of the forum is just one factor in a multi-factor analyses, not a dispositive one." *Vekash Holdings II, LLC v. Granite Falls Partners, LLC*, No. 11-cv-508-FDW (DSC), 2011 WL 6257199, at *3 (W.D.N.C. Dec. 15, 2011); *see also Pro Step Mktg., Inc. v. Real Estate Webmasters, Inc.*, No. 16-cv-00072-RLV (DSC), 2017 WL 3595489, at *5 (W.D.N.C. Aug. 21, 2017) ("*Stewart* . . . held that federal law should be used in determining the validity of forum-selection clauses, and the fact that a forum-selection clause violates a public policy statute should be but one, non-dispositive factor in a multi-factor analysis."). But *Stewart*

18

addressed this question in the context of a § 1404(a) motion to transfer, concluding that "Congress has directed that multiple considerations govern transfer within the federal court system, and a state policy focusing on a single concern or a subset of the factors identified in § 1404(a) would defeat that command." 487 U.S. at 31. As initial matter, no similar command governs here, where the forum selection clause is asserted as the sole means of satisfying the due process inquiry for personal jurisdiction. In any event, this approach is out of step with how the Ninth Circuit has synthesized *Bremen*, *Stewart*, and *Atlantic Marine*. *See Gemini Techs.*, -- F.3d --, 2019 WL 3311152, at *4 (holding that *Atlantic Marine* did not alter prior Ninth Circuit precedent giving dispositive weight to public policy factor).[11]

Turning to the North Carolina statute itself, there is little doubt that it constitutes "a strong public policy of [North Carolina], whether declared by statute or by judicial decision," under Ninth Circuit precedent as well. *Sun*, 901 F.3d at 1088. The statute's terms are clear, and North Carolina state courts will invalidate a forum selection clause on that basis. *Schwarz v. St. Jude Med., Inc.*, 802 S.E.2d 783, 792 (N.C. Ct. App. 2017). Moreover, the Ninth Circuit and courts in this district have declined to enforce a forum selection clause where it would contravene a state statute that similarly voided the clause. *Gemini Techs.*, -- F.3d --, 2019 WL 3311152, at *4; *Jones*, 211 F.3d at 498; *Alabsi v. Savoya, LLC*, No. 18-cv-06510-KAW, 2019 WL 1332191, at *6-7 (N.D. Cal. Mar. 25, 2019) (holding that clause was unenforceable due to California Labor Code section 925); *Karl v. Zimmer Biomet Holdings, Inc.*, No. 18-cv-04176-WHA, 2018 WL 5809428, at *2 (N.D. Cal. Nov. 6, 2018) (same). Indeed, the *Gemini Techologies* court specifically noted that section 22B-3 was one of four other state statutes "similar" to the one at issue in that case, although it expressed no opinion on the laws not before it. -- F.3d --, 2019 WL 3311152, at *4.

The Court therefore concludes that section 22B-3 constitutes a strong public policy of North Carolina.

### iii. Applicability of Section 22B-3

---

[11] Although these district court cases are inapposite for the reasons mentioned, the Court further notes another recent decision declining to enforce a forum selection clause even under this approach. *See Sears*, 378 F. Supp. 3d at 442-43.

1    Finally, Salesforce contests, albeit briefly, whether the contract was "entered into in North

2    Carolina." N.C. Gen. Stat. § 22B-3; *see* ECF No. 20 at 12.[12]

3    With its motion, GEA submitted a declaration from GEA's Corporate Secretary, Leslie

4    Farkas, stating that "GEA signed up for its Salesforce.com account from a computer located in

5    North Carolina." ECF No. 18-1 ¶ 3. After Salesforce's opposition attacked the sufficiency of this

6    evidence, ECF No. 20 at 12, GEA submitted a supplemental Farkas declaration with its reply, in

7    which he elaborated: "In 2014, a GEA officer, Scott Kirk, signed and electronically submitted the

8    contract acceptance form provided by Salesforce.com . . . to Salesforce while located in North

9    Carolina. That was the last act taken by GEA or Salesforce in the establishment of their

10   business/legal relationship." ECF No. 21-1 ¶ 2. Farkas also stated that he "was located in North

11   Carolina" when he signed and submitted a form renewing the parties' agreement in July 2016.

12   ECF No. 21-1 ¶ 3; *see also id.* at 4-8. Salesforce objects to paragraph 2 of the supplemental

13   Farkas declaration, arguing that Farkas lacks personal knowledge whether Kirk was in North

14   Carolina at the time and whether Salesforce took any additional action to establish the parties'

15   relationship. ECF No. 22.

16   The Court finds the second portion of the objection unpersuasive. To determine whether

17   section 22B-3 applies, North Carolina courts have looked to "[t]he last act necessary to contract

18   formation," which "usually occurs at the place of acceptance." *Schwarz*, 802 S.E.2d at 790; *see*

19   *also Szymczyk v. Signs Now Corp.*, 606 S.E.2d 728, 733 (N.C. App. 2005). Salesforce does not

20   identify any subsequent act that was necessary to establish the parties' contractual relationship.

21   Moreover, the MSA itself provides: "By accepting this Agreement, *either by clicking a box*

22   *indicating your acceptance* or by executing an order form that references this agreement, you

23   agree to the terms of this Agreement." ECF No. 1-1 at 8 (emphasis added). Further, the MSA

24   states that "[i]t is effective between You and Us as of the date of You accepting this Agreement."

25

26   [12] It is unclear whether Salesforce also contends that the MSA's California choice-of-law
     provision somehow waived section 22B-3, given that it also contends that choice of law and forum
27   selection must be evaluated separately. ECF No. 27 at 3. Nonetheless, the Court observes that
     courts have found forum selection clauses unenforceable based on one state's public policy even
28   when the contract provided that another state's substantive law would govern. *See Jones*, 211
     F.3d at 496; *Alabsi*, 2019 WL 1332191, at *2; *Karl*, 2018 WL 5809428, at *1.

20

United States District Court
Northern District of California

*Id.* Therefore, by the MSA's plain terms, it was entered into when GEA executed the order form. Given Salesforce's failure to identify any additional necessary action that it took, the only inference the Court can draw is that the agreement was entered into when GEA submitted the Order Form. Accordingly, Farkas's knowledge that no additional act was taken is irrelevant, and the Court overrules the objection as moot.

The first element, whether GEA actually submitted the form from North Carolina, bears closer scrutiny. The Ninth Circuit has instructed that, when resolving a Rule 12(b)(2) motion, "[c]onflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor." *In re Boon*, 923 F.3d at 650 (citation omitted). Although Salesforce has not submitted a contrary affidavit, the Court is reluctant to dismiss this case based on a contested, bare bones affidavit, particularly when it seems that this narrow issue could be resolved without extensive evidentiary exploration. Because "[f]urther discovery on this issue might well demonstrate facts sufficient to constitute a basis for jurisdiction," *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1135 (9th Cir. 2003), the Court will hold the motion in abeyance and authorize limited jurisdictional discovery. *See also Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1144 (9th Cir. 2004) (in considering a "*Bremen* exception" in a Rule 12(b)(3) motion, "the district court is instructed to accept [the non-moving party's] view of any facts genuinely disputed, unless or until these disputed facts are resolved by an evidentiary hearing or by other appropriate means").

### B. Venue

The Court finds it unnecessary to reach the question of venue at this time. If the Court concludes that it lacks personal jurisdiction over GEA, it need not decide that issue.

### CONCLUSION

For the foregoing reasons, the Court holds GEA's motion in abeyance pending jurisdictional discovery. The parties will conduct such discovery for the next 30 days.

The Court will conduct a case management conference on September 30, 2019. A joint

/ / /

/ / /

21

case management statement is due September 23, 2019.  In it, the parties should describe what further steps are necessary to the resolution of the issues presented by this motion.

**IT IS SO ORDERED.**

Dated:  August 13, 2019



_____
JON S. TIGAR
United States District Judge