UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SALESFORCE.COM, INC., <br><br> Plaintiff, <br><br> v. <br><br> GEA, INC., <br><br> Defendant. | Case No. 19-cv-01710-JST <br><br> **ORDER DENYING MOTION TO DISMISS** <br><br> Re: ECF No. 30 |

Before the Court is Defendant GEA, Inc.'s motion to dismiss for lack of personal jurisdiction and improper venue. ECF No. 18. On August 13, 2019, the Court held the motion in abeyance and ordered the parties to conduct jurisdictional discovery and file supplemental briefing. ECF No. 30. Plaintiff Salesforce.com, Inc. filed a supplemental opposition to GEA's motion to dismiss on January 10, 2020. ECF No. 42. GEA filed a response to Salesforce's supplemental brief on February 4, 2020. For the reasons that follow, the Court will now deny the motion.

**I.    BACKGROUND**

The Court summarized the factual dispute and procedural posture of this case in its prior order. *See* ECF No. 30 at 1-2. In short, GEA has sued Salesforce.com, Inc. ("Salesforce") in North Carolina state court over GEA's account with Salesforce, which it created in 2014 by submitting an Order Form and assenting to the Master Subscription Agreement ("MSA"), and which it renewed via a new Order Form on July 6, 2016. *Id.* at 1-2. Salesforce subsequently brought the instant declaratory judgment action, which GEA now seeks to dismiss.[1] *Id.* at 2.

---

[1] GEA withdrew its alternative request to transfer venue pursuant to 28 U.S.C. § 1404(a) in its reply brief. ECF No. 21 at 17 n.5.

In its order holding the motion in abeyance, the Court held that it did not have specific jurisdiction over GEA[2] and that it needed more information to determine whether GEA had consented to jurisdiction by agreeing to a forum selection clause in the MSA. *Id.* at 9, 21. Because it did not conclude that it lacked personal jurisdiction over GEA, the Court did not reach the question of venue. *Id.* at 21.

## II.  JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. § 1332.

## III.  LEGAL STANDARD

### A.  Rule 12(b)(2)

In contesting a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of demonstrating personal jurisdiction. *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006). But where the "motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011). Further, "[c]onflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor." *In re Boon Glob. Ltd.*, 923 F.3d 643, 650 (9th Cir. 2019).

### B.  Rule 12(b)(3)

Similarly, "[o]nce the defendant has challenged the propriety of venue in a given court, the plaintiff bears the burden of showing that venue is proper." *Autodesk, Inc. v. Kobayashi + Zedda Architects Ltd.*, 191 F. Supp. 3d 1007, 1020 (N.D. Cal. 2016) (citing *Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979)). In evaluating a Rule 12(b)(3) motion to dismiss for improper venue, the "pleadings need not be accepted as true, and facts outside the pleadings may be considered." *Doe 1 v. AOL LLC*, 552 F.3d 1077, 1081 (9th Cir. 2009) (per curiam).

/ / /

/ / /

---

[2] Salesforce did not argue that the Court has general jurisdiction over GEA. ECF No. 30 at 3.

## IV. DISCUSSION

### A. Personal Jurisdiction

For the purposes of this motion, the parties do not dispute that GEA assented to the MSA's forum selection clause both in 2014, when it established its Salesforce account, ECF No. 20 at 7; ECF No. 21-1 ¶ 2, and when it renewed that account in 2016, ECF No. 20 at 7; ECF No. 21 at 9.[3] Nor do they dispute whether the claims fall within the clause's scope. Rather, GEA argues that the forum selection clause is unenforceable due to a North Carolina statute that provides, with some exceptions not relevant here, that "any provision in a contract entered into in North Carolina that requires the prosecution of any action or the arbitration of any dispute that arises from the contract to be instituted or heard in another state is against public policy and is void and unenforceable." N.C. Gen. Stat. Ann. § 22B-3; *see also* ECF No. 21 at 9-16.

It its prior order, the Court held that, under California or federal law, it could not enforce the clause if it would "contravene a strong public policy of [another] forum." ECF No. 30 at 14 n.9 (quoting *Gemini Techs., Inc. v. Smith & Wesson Corp.*, 931 F.3d 911, 914 (9th Cir. 2019)). Given the posture of this case – Salesforce seeking to enforce an "inbound" forum selection clause, i.e., one that would keep the lawsuit in the forum chosen by the contract – the Court held that the public policy of North Carolina, though not the forum state here, could bar enforcement. *Id.* at 9-17. It also held that North Carolina General Statutes Section 22B-3 constituted a strong public policy of that state. *Id.* at 19.

The only remaining question was whether the statute applied here, which turned on whether the MSA was "entered into in North Carolina." N.C. Gen. Stat. Ann. § 22B-3. In order to answer that question, the Court looked to "[t]he last act necessary to contract formation," which "usually occurs at the place of acceptance." *Id.* at 20 (citing *Schwarz v. St. Jude Med., Inc.*, 802 S.E.2d 783, 790 (N.C. Ct. App. 2017)). After evaluating the terms of the MSA, the Court held that the "last act necessary" to form the contract was GEA's execution of the Order Form. *Id.* at

---

[3] That clause concerns the governing law and jurisdiction for "any lawsuit arising out of or in connection with this Agreement" and provides that "[t]he governing law is . . . California and controlling United States federal law." ECF No. 1-1 at 14. In addition, "[t]he courts having exclusive jurisdiction are . . . San Francisco, California, U.S.A." *Id.*

1    20-21.  GEA argued that this execution occurred in North Carolina, providing a declaration from

2    Leslie Farkas, GEA's corporate secretary, stating that "[i]n 2014, a GEA officer, Scott Kirk,

3    signed and electronically submitted the contract acceptance form provided by Salesforce.com . . .

4    to Salesforce while located in North Carolina," and that Farkas "was located in North Carolina"

5    when he signed and submitted a form renewing the parties' agreement in July 2016.  ECF No. 21-

6    1 ¶¶ 2-3.  Salesforce objected to the declaration, which was submitted on reply, and the Court

7    authorized limited jurisdictional discovery into the question of where the contract was executed.

8    ECF No. 30 at 20-21.

9          Salesforce submitted its supplemental brief on January 10, 2020, ECF No. 42, and GEA

10   submitted its response on February 4, 2020, ECF No. 43.  The Court took the matter under

11   submission without an additional hearing.

                **1.**       **Applicable Law**

13         Before turning to the parties' factual arguments, the Court notes that in its prior order, it

14   erroneously applied North Carolina law to determine where the contract was formed.  In fact, the

15   parties agree that the Court should apply California law, ECF No. 42 at 8 n.1, ECF No. 42-1 (Aug.

16   8, 2019 Hr'g Tr.) at 35-36, which comports with the principle that "[a] federal court sitting in

17   diversity must look to the forum state's choice of law rules to determine the controlling

18   substantive law," *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 589 (9th Cir. 2012)

19   (quoting *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1187 (9th Cir. 2001)).  The test is

20   the same, however, under both North Carolina and California law.  *See* 1 Witkin, Summary of Cal.

21   Law (11th ed. 2019) Contracts, § 75 (in California, a contract is formed "where the last act is done

22   that is necessary to give a contract binding effect, under the forum's rules of offer and

23   acceptance"); *Schwarz*, 802 S.E.2d at 790 ("Under North Carolina law, a contract is made in the

24   place where the last act necessary to make it binding occurred.").

                **2.**       **Place of Formation**

26         It is undisputed that Farkas signed the renewed MSA via DocuSign on July 6, 2016 in

4

Charlotte, North Carolina.[4] ECF No. 42 at 8; ECF No. 43 at 6. The parties dispute, however, whether this act constituted an acceptance of Salesforce's offer, thus completing the contract, or whether completion of the contract required additional action by Salesforce from California.

      Salesforce contends that the offer was only open through June 30, 2016. ECF No. 42 at 8. This is supported by the signed Order Form, which states: "Offer Valid Through 6/30/2016." ECF No. 1-1 at 3. Salesforce argues that Farkas's July 6, 2016 signature constituted a counteroffer, putting the ball back in Salesforce's court. ECF No. 42 at 10. When Salesforce "undertook acts thereafter to accept GEA's counteroffer in San Francisco," or, alternatively, to waive the late acceptance, the argument goes, it performed the "last act necessary" to form the contract. *Id.* at 10-11. In support, Salesforce provides a declaration from Aseem Gupta, senior director of litigation at Salesforce. ECF No. 42-2 ("Gupta Decl."). Gupta describes the typical process for renewing a Salesforce account, including the issuance of an Order Form with an offer expiration date. *Id.* ¶ 4. "If a customer executes an Order Form past the offer expiration date, Salesforce reserves the right to accept or reject the order," a process that "occurs through and is managed by a team based in San Francisco, California." *Id.* ¶ 6. Gupta explains that when an Order Form is untimely executed, Salesforce may waive the late acceptance or "treat[] the late acceptance as a counteroffer and then accept[] that counteroffer." *Id.* ¶ 7. Gupta states that he "understand[s]" Salesforce's decision to proceed with GEA's renewal despite Farkas's late acceptance as "an acceptance of GEA's counteroffer or a waiver of the late acceptance." *Id.* ¶ 8. Gupta does not claim to have personal knowledge of the details of Salesforce's decision.

      GEA responds that Farkas's acceptance was not late. In support, it provides a declaration from Farkas and a copy of an email exchange Farkas had with Rachel Cutrell, a Salesforce employee, on July 6, 2016. ECF Nos. 43-4, 43-6. In her email signature, Cutrell identifies herself as a "Renewals Manager" for Salesforce. ECF No. 43-6 at 3. She is listed at the top of the GEA Order Form as having proposed the order, ECF No. 1-1 at 3, and on GEA's Salesforce account

---

[4] As neither party discusses Kirk's 2014 execution of the original contract, the Court assumes that the parties agree that the relevant question here is where the 2016 renewal contract was entered into.

5

1  page as the "contract owner," Gupta Decl. at 5.  The email exchange shows that on July 6, 2016,
2  Farkas forwarded Cutrell an email from DocuSign explaining that the Order Form had been
3  "voided and can no longer be accepted." ECF No. 43-6 at 3-4.  Farkas wrote, "I think you need to
4  resend." *Id.* at 3.  A few hours later, at 1:33 p.m., Cutrell replied, "I resent the contract after I
5  voided it– you should see an email that came after that one with the subject line 'Q-00656772
6  from salesforce.com' that was sent at 1:10pm." *Id.* at 2.  At 1:40 p.m., Farkas replied that the
7  resent Order Form had gone into his clutter folder.  *Id.*  GEA argues that Farkas signed that Order
8  Form immediately thereafter, submitting in support an email DocuSign sent Farkas at 1:41 p.m. on
9  July 6, 2016 marking "Q-00656772 from salesforce.com" as "[c]ompleted." ECF No. 43-7 at 2.
10 GEA argues that when Cutrell voided the first Order Form and resent it to Farkas, she extended a
11 new offer that he timely accepted, thus performing "the last act necessary" from North Carolina.
12 ECF No. 43 at 9-10.

13 Neither party correctly identifies the legal principles that govern their dispute.  GEA's
14 contention that its acceptance was not late is belied by the facts.  The Order Form stated clearly
15 that the offer was valid only through June 30, 2016.  ECF No. 1-1 at 3.  GEA accepted on July 6,
16 2016, almost a week later.  An offeror has the right to set a time limit on her offer, and "[u]pon the
17 lapse of that time the matter is completely ended and the offer is withdrawn." *Auslen v. Johnson*,
18 118 Cal. App. 2d 319, 322 (Cal. Ct. App. 1953); *see also* Cal. Civ. Code § 1587 (an offer is
19 revoked "[b]y the lapse of the time prescribed in such proposal for its acceptance").  An offer
20 expiration window controls even if "the time specified in the offer is much less than a reasonable
21 time." 1 Corbin on Contracts § 2.14 (2019).  "When the time for acceptance specified in an offer
22 passes, the offeree does not have the capacity thereafter to bind the offeror to a contract by a tardy
23 acceptance." 1 Miller & Starr, Cal. Real Est. § 1:31 (4th ed. 2019) (citing *Transamerica Corp. v.*
24 *Parrington*, 115 Cal. App. 2d 346, 352 (Cal. Ct. App. 1953)).  Therefore, as a matter of law,
25 GEA's tardy acceptance could not have been the last act in the formation of the parties' contract.

26 For its part, Salesforce describes GEA's putative acceptance as a counter-offer.  The
27 leading California case, however, rejects the counter-offer theory in favor of one of waiver. *See*
28 *Sabo v. Fasano*, 154 Cal. App. 3d 502, 507 (Cal. Ct. App. 1984) ("Both the 'counteroffer' and

'waiver' theories can be rationally defended.  For the reasons set forth below, we have elected to follow the waiver theory.").  Under that construct, where an offeree accepts an offer after the window for acceptance has closed, the offeror "may waive the time and bind the late-accepting party." *Id.* at 503; *see also Jeffrey Kavin, Inc. v. Frye*, 204 Cal. App. 4th 35, 44-45 (Cal. Ct. App. 2012).  "[G]enerally this decision will be expressed by [her] actions after receiving the late acceptance." *Sabo*, 154 Cal. App. 3d at 507-08.  Acceptance may be communicated by an explicit waiver of the time limit, but may also be communicated by actions consistent with performance of the contract and/or a statement that the offeror intends to proceed under the terms of the contract. *Id.* at 508-09.

Applying these principles, GEA's late acceptance by itself was insufficient to form a contract between the parties because it had no legal effect.  The contract was formed when Salesforce "decided not to reject the Order Form and to instead proceed with the transaction." Gupta Decl. ¶ 8.  It is thus clear that under California law, waiver of GEA's late acceptance was "necessary to give [the Order Form] binding effect." Witkin, *supra*, § 75.  Because Salesforce has submitted a declaration stating that that the waiver process "occurs through and is managed by a team based in San Francisco, California," Gupta Decl. ¶ 6, it has met its burden to make a prima facie showing of jurisdiction, *see Mavrix Photo*, 647 F.3d at 1223.

### B. Venue

A civil action may be brought in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." 28 U.S.C. § 1391(b)(1).  For the purposes of venue, a corporate defendant resides in "any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." *Id.* § 1391(c)(2).  In light of this Court's determination that personal jurisdiction exists over GEA, it follows that venue is also proper.  *See also United States v. Park Place Assocs., Ltd.*, 563 F.3d 907, 929 n.14 (9th Cir. 2009) (valid forum selection clause constitutes consent to personal jurisdiction and venue).

/ / /

/ / /

**CONCLUSION**

For the foregoing reasons, the Court DENIES the motion to dismiss.

The Court now sets a case management conference for June 9, 2020 at 2:00 p.m.  An updated joint case management statement is due June 2, 2020.

**IT IS SO ORDERED.**

Dated:  May 26, 2020



_____
JON S. TIGAR
United States District Judge