ROBERT NOLAN (Bar No. 235738)
robert.nolan@us.dlapiper.com
JOY KIM (Bar No. 294841)
joy.kim@us.dlapiper.com
ELIZABETH CALLAHAN (Bar No. 323510)
elizabeth.callahan@us.dlapiper.com
**DLA PIPER LLP (US)**
555 Mission Street, Suite 2400
San Francisco, California 94105-2933
Tel:    415.836.2500
Fax:    415.836.2501

Attorneys for Plaintiff
SALESFORCE.COM, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| SALESFORCE.COM, INC.,<br><br>Plaintiff,<br><br>v.<br><br>GEA, INC.,<br><br>Defendant.<br><br>AND RELATED COUNTERCLAIMS. | CASE NO.  4:19-CV-01710-JST<br><br>**SALESFORCE.COM, INC.'S MOTION TO DISMISS GEA'S COUNTERCLAIM; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date:        August 19, 2020<br>Time:        2:00 p.m.<br>Courtroom:   6 – 2nd Floor<br>Judge:       Hon. Jon S. Tigar |

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on Wednesday, August 19, 2020, at 2:00 p.m., or as soon thereafter as the matter may be heard, or as taken under submission and decided without hearing, by the Honorable Jon S. Tigar in Courtroom 6 of the United States District Court for the Northern District of California, Oakland Courthouse, 1301 Clay Street, Oakland, California 94612, Plaintiff salesforce.com, inc. ("Salesforce") will and hereby does move to dismiss each and every counterclaim asserted against Salesforce by GEA, Inc.'s ("GEA") Amended Answer and Counterclaim filed on June 29, 2020 (Dkt. No. 58) under Federal Rule of Civil Procedure 12(b)(6) ("Motion to Dismiss" or "Motion"). This Motion to Dismiss is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, oral argument of counsel, and such other materials and argument as may be presented in connection with the hearing on the motion.

**STATEMENT OF ISSUES TO BE DECIDED AND RELIEF REQUESTED**

1.  Whether GEA has failed to state a claim for trade secret misappropriation under the California Uniform Trade Secrets Act (CUTSA).

2.  Whether GEA's counterclaim for misappropriation of trade secrets states a claim where GEA has failed to identify its trade secrets with any particularity.

3.  Whether GEA's counterclaims for conversion, intentional interference with contractual relations and intentional interference with prospective economic advantage, conspiracy and aiding and abetting (conversion), and conspiracy and aiding and abetting (misappropriation of trade secrets) are superseded by CUTSA and thus fail to state a claim.

4.  Whether GEA's counterclaims for conversion, intentional interference with contractual relations and intentional interference with prospective economic advantage, conspiracy and aiding and abetting (conversion) are contract claims that have been improperly pled as tort claims.

5.  Whether GEA's counterclaims for conversion, intentional interference with

2

contractual relations and intentional interference with prospective economic advantage, conspiracy and aiding and abetting (conversion), and conspiracy and aiding and abetting (misappropriation of trade secrets) fail to state a claim on independent grounds.

6.    Whether GEA's counterclaim under North Carolina's Unfair and Deceptive Trade Practices Act fails to state a claim.

7.    Salesforce requests an order dismissing all claims and GEA's Counterclaim in its entirety.

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION...................................................................................................1

II.   FACTUAL BACKGROUND ................................................................................2

III.  LEGAL STANDARD ..........................................................................................5

IV.  ARGUMENT .......................................................................................................5

     A.    GEA Fails to State a Claim for Misappropriation of Trade Secrets Under CUTSA...............................................................................................6

         1.    GEA does not identify any alleged trade secret with particularity. ...........7

         2.    GEA fails to plausibly allege misappropriation by Salesforce.................8

     B.    GEA's Second, Third, Fifth, Sixth, Seventh, Eighth Counterclaims Fail Because They are Superseded by CUTSA..........................................................9

     C.    GEA's Second, Third, Fifth, Sixth, Seventh, and Eighth Counterclaims are Improperly Pled as Tort Claims and Should be Dismissed.................................11

     D.    GEA's Second, Third, Fifth, Sixth, Seventh, Eighth, and Ninth Counterclaims Fail to State a Claim.....................................................................13

         1.    GEA Fails to State a Claim for Conversion .............................................13

         2.    GEA Fails to State a Claim for Negligence .............................................13

         3.    GEA Fails to State a Claim for Intentional Interference with Contractual Relations .................................................................................14

         4.    GEA Fails to State a Claim for Intentional Interference with Prospective Economic Advantage.............................................................15

         5.    GEA Fails to State a Claim for Conspiracy and Aiding and Abetting.....16

     E.    GEA Fails to State a Claim for Breach of Written Contract. .............................17

     F.    GEA Fails to State a Claim under North Carolina's Unfair and Deceptive Trade Practices Act ...........................................................................................18

V.   CONCLUSION ..................................................................................................22

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alta Devices, Inc. v. LG Elecs., Inc.*,
 343 F. Supp. 3d 868 (N.D. Cal. 2018) .................................................................................6

*Altavion, Inc. v. Konica Minolta Sys. Lab., Inc.*,
 226 Cal. App. 4th 26 (2014) ...............................................................................................7

*Ashcroft v. Iqbal*,
 566 U.S. 652 (2009) ............................................................................................................5

*ATS Prods., Inc. v. Champion Fiberglass, Inc.*,
 No. 13-cv-02403-SI, 2015 WL 224815 (N.D. Cal. Jan. 15, 2015) ...................................10

*Balistreri v. Pacifica Police Dep't*,
 901 F.2d 696 (9th Cir. 1988) ..............................................................................................5

*Belk, Inc. v. Meyer Corp., U.S.*,
 679 F.3d 146 (4th Cir. 2012) ............................................................................................19

*Bell Atlantic v. Twombly*,
 550 U.S. 544 (2007) .......................................................................................................5, 21

*BFGC Architects Planners, Inc. v. Forcum/Mackey Constr., Inc.*,
 119 Cal. App. 4th 848 (2004) ...........................................................................................12

*Bladeroom Grp. Ltd. v. Facebook, Inc.*,
 No. 15-cv-01370-EJD, 2015 WL 8028294 (N.D. Cal. Dec. 7, 2015) ..............................7, 8

*Bus. Sols., LLC v. Ganatra*,
 No. SA CV 18-1426-DOC, 2019 WL 926351 (C.D. Cal. Jan. 7, 2019) ...........................10

*Carcano v. JBSS, LLC*,
 200 N.C. App. 162 (2009) ................................................................................................19

*Combs & Assocs. v. Kennedy*,
 147 N.C. App. 362 (2001) .................................................................................................22

*Cross v. Ciox Health, LLC*,
 No. 4:19-CV-7-FL, 2020 WL 534289 (E.D.N.C. Feb. 3, 2020) .......................................20

*CytoDyn of New Mexico, Inc. v. Amerimmune Pharms., Inc.*,
 160 Cal. App. 4th 288 (2008)...........................................................................................6, 8

*Ellis v. Louisiana-Pac. Corp.*,
 699 F.3d 778 (4th Cir. 2012)............................................................................................21

II

*Epstein v. Wash. Energy Co.*,
 83 F.3d 1136 (9th Cir. 1996) ..................................................................................5, 9

*Exclaim Mktg., LLC v. DirecTV, LLC*,
 134 F. Supp. 3d 1011 (E.D.N.C. 2015) .........................................................................20

*Farhang v. Indian Inst. of Tech., Kharagpur*,
 No. C-08-2658, 2010 WL 2228936 (N.D. Cal. June 1, 2010) ....................................6, 7

*Fen-Phen Series 2005-01 v. James Farrin, P.C.*,
 No. 1:09CV479, 2010 WL 9109369 (M.D.N.C. July 19, 2010) ....................................21

*Gatan, Inc. v. Nion Co.*,
 No. 15-cv-01862-PJH, 2018 WL 2117379 (N.D. Cal. May 8, 2018) .............................8

*Global Hookah Distribs., Inc. v. Avior, Inc.*,
 401 F. Supp. 3d 653 (W.D.N.C. 2019) ........................................................................21

*Hall v. City of Los Angeles*,
 697 F.3d 1059 (9th Cir. 2012) ....................................................................................19

*IIG Wireless Inc. v. Yi*,
 22 Cal. App. 5th 630 (2018) ........................................................................................16

*JRS Prods., Inc. v. Matsushita Elec. Corp. of Am.*,
 115 Cal. App. 4th 168 (2004) ......................................................................................11

*K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.*,
 171 Cal. App. 4th 939 (2009) ...................................................................................9, 10

*Ladd v. Cty. of San Mateo*,
 12 Cal. 4th 913 (1996) ................................................................................................14

*Legacy Data Access, LLC v. MediQuant, Inc.*,
 No. 3:15-cv-00584-FDW-DSC, 2017 WL 6001637 (W.D.N.C. Dec. 4, 2017) ................21

*Market Choice, Inc. v. New England Coffee Co.*,
 No. 5:08-CV-90, 2009 WL 2590651 (W.D.N.C. Aug. 18, 2009) ............................21, 22

*MedioStream, Inc. v. Microsoft Corp.*,
 869 F. Supp. 2d 1095 (N.D. Cal. 2012) ...............................................................8, 9, 10

*Mindy's Cosmetics, Inc. v. Dakar*,
 611 F.3d 590 (9th Cir. 2010) ......................................................................................13

*Oasis W. Realty, LLC v. Goldman*,
 51 Cal. 4th 811 (2011) ................................................................................................17

*Pac. Gas & Elec. Co. v. Bear Stearns & Co.*,
 50 Cal. 3d 1118 (1990) ...............................................................................................14

*Parks v. Sch. of Bus., Inc. v. Symington*,
   51 F.3d 1480 (9th Cir. 1995)...........................................................................................5

*Quantum Assocs., Inc. v. Symbol Techs., Inc.*,
   No. 01-02789, 2002 WL 1735356 (N.D. Cal. July 12, 2002)....................................11, 12

*Rahamankhan Tobacco Enters. Pvt. Ltd. v. Evans MacTavish Agricraft, Inc.*,
   989 F. Supp. 2d 471 (E.D.N.C. 2013)........................................................19, 20, 21

*Rogers v. Keffer, Inc.*,
   243 F. Supp. 3d 650 (E.D.N.C. 2017)...............................................................21

*Roots Ready Made Garments v. Gap, Inc.*,
   No. 07-03363, 2007 WL 3045999 (N.D. Cal. Oct. 18, 2007)....................................11

*Ross v. United States Bank Nat'l Ass'n*,
   542 F. Supp. 2d 1014 (N.D. Cal. 2008) ............................................................13

*Roy Allan Slurry Seal, Inc. v. Am. Asphalt S., Inc.*,
   2 Cal. 5th 505 (2017)..............................................................................15, 16

*RSPE Audio Sols., Inc. v. Vintage King Audio, Inc.*,
   No. CV 12-06863 DDP, 2013 WL 100178 (C.D. Cal. Jan. 7, 2013)...........................10

*Salyers v. Metro. Life Ins. Co.*,
   871 F.3d 934 (9th Cir. 2017)........................................................................18

*Silvaco Data Sys. v. Intel Corp.*,
   184 Cal. App. 4th 210 (2010).......................................................................10

*SocialApps, LLC v. Zynga, Inc.*,
   No. 4:11-cv-04910 YGR, 2012 WL 2203063 (N.D. Cal. June 14, 2012) ....................8

*Solum v. Certainteed Corp.*,
   147 F. Supp. 3d 404 (E.D.N.C. 2015)..............................................................19

*Space Data Corp. v. X*,
   No. 16-cv-03260-BLF, 2017 WL 5013363 (N.D. Cal. Feb. 16, 2017) .......................9

*Synopsys, Inc. v. AtopTech, Inc.*,
   No. 13-cv-02965-SC, 2013 WL 5770542 (N.D. Cal. Oct. 24, 2013) ......................7, 8

*Tagtrends, Inc. v. Nordstrom, Inc.*,
   No. SACV1300563JVSJPRX, 2013 WL 12126741 (C.D. Cal. Aug. 15, 2013) .........16, 17

*Topshelf Mgmt., Inc. v. Campbell-Ewald Co.*,
   117 F. Supp. 3d 722 (M.D.N.C. 2015)...........................................................19, 20

*Walker v. Fleetwood Homes of N.C., Inc.*,
   362 N.C. 63 (2007).................................................................................19

IV

*Wood v. Milyard*,
   566 U.S. 463 (2012) ..................................................................................................18

**Statutes**

28 U.S.C. § 1332 ..................................................................................................................6

28 U.S.C. § 1836 (Defend Trade Secrets Act) ....................................................................6

Cal. Civ. Code §§ 3426-3426.11(California Uniform Trade Secrets Act (CUTSA)).............. *passim*

Cal. Civ. Code § 3426.1(d) ..................................................................................................6

Cal. Civ. Proc. Code § 2019.210 ..........................................................................................8

N.C.G.S. § 75-1.1(North Carolina Unfair and Deceptive Trade Practices Act
   (UDTPA))........................................................................................................ *passim*

**Other Authorities**

Fed. R. Civ. P. 9(b)..................................................................................................19, 20

Fed. R. Civ. P. 12(b)(6)..........................................................................................2, 5

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.      INTRODUCTION**

2

3      GEA's Amended Answer and Counterclaim, Dkt. No. 58 ("Counterclaim" or "Countercl.")

4  follows the "kitchen sink" approach to pleading, asserting nine counterclaims based on the same

5  facts: (1) trade secret misappropriation; (2) conversion; (3) breach of contract; (4) negligence; (5)

6  intentional interference with contractual relations; (6) intentional interference with prospective

7  economic advantage; (7) conspiracy and aiding and abetting conversion, (8) conspiracy and aiding

8  and abetting misappropriation of trade secrets, and (9) violation of the North Carolina Unfair and

9  Deceptive Trade Practices Act ("UDTPA"). Each fails and should be dismissed.

10      First, the Counterclaim contends that the data and information hosted by Salesforce's

11  customer relationship management ("CRM") platform are "trade secrets," but fails to identify

12  GEA's alleged trade secrets with any particularity, as required by CUTSA. Moreover, the

13  Counterclaim does not plausibly allege that Salesforce misappropriated any such alleged trade

14  secret. To the contrary, GEA alleges it provided Jeremy LeClair, a former sales representative at

15  GEA, not Salesforce, with access to its database. LeClair, not Salesforce, engaged in any alleged

16  misappropriation. Aside from conclusory allegations (which need not be accepted as true), GEA

17  fails to allege any facts showing that Salesforce misappropriated any purported trade secret.

18      Second, the common law claims (for conversion, negligence, intentional interference with

19  contractual relations, intentional interference with prospective economic advantage, and

20  conspiracy and aiding and abetting) are superseded by CUTSA because these claims arise from the

21  same nucleus of facts as the misappropriation of trade secrets claim and are therefore improper as

22  a matter of law. The common law tort claims should also be dismissed because the only duties

23  owed by Salesforce are governed by the Order Form and Master Subscription Agreement

24  ("MSA") and as such, these claims are an improper attempt to manufacture tort claims from an

25  alleged breach of contract. Each of these counterclaims fail for independent reasons, as well, as set

26  forth below.

27      Third, GEA fails to state a claim for breach of contract because it fails to allege any facts

28  regarding any specific provisions of the MSA that Salesforce allegedly breached.

1

Fourth, GEA improperly brings a claim under a North Carolina law, alleging violation of North Carolina's UDTPA when this Court has already found that California law applies. And even if North Carolina law applied, GEA fails to state a claim under the UDTPA because it fails to allege the requisite facts to support this claim.

Salesforce respectfully requests that the Court grant the motion and dismiss the counterclaims with prejudice.

## II.      FACTUAL BACKGROUND[1]

GEA, a Nevada corporation, with its principal place of business in Charlotte, North Carolina, owns intellectual property that plays an important role in the business of Grand Estates Auction Company, a luxury residential auction company. Dkt. No. 58, Countercl. ¶¶ 2, 5. GEA licenses this intellectual property to Grand Estates Auction Company. *Id.* GEA alleges that its intellectual property consists of "proprietary information," organized into a database that "tracks more than 40 different data points related to past and future buyers, sellers, and business opportunities, including prospective buyer identities, contact information, personal price points, and purchasing habits and history." *Id.* ¶ 5. Salesforce, a Delaware corporation, with its principal place of business in San Francisco, operates a CRM platform that allows customers to manage their sales, service, marketing and commerce needs. *Id.* ¶¶ 3, 6.

In September 2014, Salesforce and GEA entered into an agreement, the MSA, allowing GEA to house its database on Salesforce's CRM platform. *Id.* ¶ 6.  The Salesforce CRM database that GEA purchased is a cloud-based database system. Salesforce did not and does not know what is contained in GEA's database. On July 6, 2016, GEA voluntarily renewed its account with Salesforce. *Id.*; *see also* Dkt. No. 1-1 at 5 (GEA Purchase Order).

The MSA contains key terms that are relevant to this dispute and the relationship between the parties. Dkt. No. 58, Countercl. ¶ 6; Dkt. No. 1, Compl., Ex. 1. In particular, the MSA contains a limitation of liability that provides:

---

[1] Salesforce disputes the allegations in the Counterclaim, and sets them forth herein solely for purposes of this Motion.

**11. LIMITATION OF LIABILITY**

**11.1 Limitation of Liability.** NEITHER PARTY'S LIABILITY WITH RESPECT TO ANY SINGLE INCIDENT ARISING OUT OF OR RELATED TO THIS AGREEMENT WILL EXCEED THE AMOUNT PAID BY CUSTOMER HEREUNDER IN THE 12 MONTHS PRECEDING THE INCIDENT, PROVIDED THAT IN NO EVENT WILL EITHER PARTY'S AGGREGATE LIABILITY ARISING OUT OF OR RELATED TO THIS AGREEMENT EXCEED THE TOTAL AMOUNT PAID BY CUSTOMER HEREUNDER. THE ABOVE LIMITATIONS WILL APPLY WHETHER AN ACTION IS IN CONTRACT OR TORT AND REGARDLESS OF THE THEORY OF LIABILITY. HOWEVER, THE ABOVE LIMITATIONS WILL NOT LIMIT CUSTOMER'S PAYMENT OBLIGATIONS UNDER SECTION 6 (FEES AND PAYMENT FOR PURCHASED SERVICES).

**11.2. Exclusion of Consequential and Related Damages.** IN NO EVENT WILL EITHER PARTY HAVE ANY LIABILITY TO THE OTHER PARTY FOR ANY LOST PROFITS, REVENUES OR INDIRECT, SPECIAL, INCIDENTAL, CONSEQUENTIAL, COVER OR PUNITIVE DAMAGES, WHETHER AN ACTION IS IN CONTRACT OR TORT AND REGARDLESS OF THE THEORY OF LIABILITY, EVEN IF A PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. THE FOREGOING DISCLAIMER WILL NOT APPLY TO THE EXTENT PROHIBITED BY LAW.

MSA § 11.

In August 2016, shortly after GEA renewed its account with Salesforce, GEA granted a non-exclusive license to Luxury Auctions Marketing, Inc. (LAMI), a company controlled by Jeremy LeClair. Dkt. No. 58, Countercl. ¶ 7. Under the license agreement, LAMI and LeClair obtained access to the GEA database with Salesforce. *Id.* The Counterclaim alleges that LeClair proceeded to delete access credentials for Valeria DeVine, GEA's CEO, and her husband, Leslie Farkas. *Id.* ¶ 9. As a result of LeClair's actions, GEA was allegedly locked out and unable to access the database. *Id.* When GEA discovered it was locked out of the Salesforce database, it notified LeClair that LAMI had breached the license agreement and demanded that LeClair restore its access. *Id.* ¶ 11.

On October 13, 2016, DeVine emailed Salesforce, attaching the LAMI license agreement as proof of its ownership of the account, and demanded that Salesforce immediately restore GEA's access to the database. *Id.* ¶ 12. GEA claims that Alonso Barrantes acknowledged receipt of the

3

email and attachment, (*id.* ¶ 14), but concedes that Barrantes noted LeClair had provided documentation of ownership. *Id.* ¶ 18. The Counterclaim itself admits the existence of these competing claims. Indeed, the competing ownership claims were a significant enough issue for GEA that it filed an action against LeClair in 2016 regarding the disputed ownership. Dkt. No. 1, Compl. ¶ 13. GEA admits the case is still pending. Dkt. No. 58, Answer ¶ 15.

On October 17, 2016, DeVine emailed Salesforce employee Andrew Hotchkiss informing him that the email constituted formal legal notice to be forwarded to Salesforce's legal department regarding LeClair's purported theft. Dkt. No. 58, Countercl. ¶ 20. On November 20, 2016, Farkas emailed Salesforce, demanding that it shut down the new LAMI account and prevent LeClair from further use of GEA's alleged proprietary information. *Id.* ¶ 26. On December 29, 2016, GEA regained access to the Salesforce database. *Id.* ¶ 30.

In 2018, Jeremy LeClair filed a bankruptcy petition, and on August 30, 2018, the case was transferred to the Central District of California. *See LeClair v. United States*, Case No. 2:18-ap-01276. Only after LeClair declared bankruptcy did GEA turn to Salesforce, claiming hundreds of millions of dollars in damages.

In sum, GEA's counterclaims have been brought against the wrong party—the list of grievances GEA alleges against Salesforce are ones that should have been brought against Jeremy LeClair to whom GEA granted a non-exclusive license through LAMI and to whom GEA gave administrator access to GEA's Salesforce account. GEA did so because DeVine and Farkas had moved to Naples, Florida to retire. The crux of GEA's grievances stem from purported damages to GEA caused by LeClair's conduct when LeClair deleted GEA and its employees' access credentials to the Salesforce database and locked GEA and its employees out of the account. GEA also takes issue with Salesforce's unwillingness to restore access to GEA and for purportedly allowing LeClair to copy and migrate GEA's database into a new Salesforce account. All of the purported wrongdoing that GEA takes issue with are actions undertaken by LeClair, not Salesforce—Salesforce is the victim of GEA's shameless attempt to obtain money from Salesforce because LeClair declared bankruptcy.

### III.     LEGAL STANDARD

Under Rule 12(b)(6), the Court may dismiss a complaint if it fails to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). While "detailed factual allegations are not required," a complaint must have sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 566 U.S. 652, 678 (2009) (citing *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). This Court may dismiss a complaint for failure to state a claim based on either the "lack of a cognizable legal theory" or on "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). In ruling on a motion to dismiss under Rule 12(b)(6), the Court must take "all allegations of material fact as true and construe[s] them in the light most favorable to the non-moving party." *Id.* at 570; *Parks v. Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).

To survive a motion to dismiss, pleadings must allege sufficient facts to "permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. 662, 679 (2009) (internal quotations omitted). "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996); *see also Twombly*, 550 U.S. at 555 ("threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are not taken as true) (citations omitted)."[A] plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations omitted).

### IV.     ARGUMENT

GEA's counterclaims for misappropriation of trade secrets, conversion, negligence, breach of written contract, intentional interference with contractual relations, intentional interference with prospective economic advantage, conspiracy and aiding and abetting (conversion), conspiracy and aiding and abetting (misappropriation of trade secrets), and violation of North Carolina's UDTPA each fail to state a claim against Salesforce and should be dismissed. The counterclaims for conversion, negligence, intentional interference with contractual relations, intentional interference with prospective economic advantage, conspiracy and aiding and abetting (conversion), and

1    conspiracy and aiding and abetting (misappropriation of trade secrets) are superseded by CUTSA,

2    providing another ground for dismissal. These counterclaims also constitute an improper attempt

3    by GEA to reformulate a breach of contract claim into tort claims. Further, the breach of contract

4    claim should be dismissed because GEA fails to allege any facts supporting the claim that that

5    Salesforce breached any contractual duty it owed under the MSA. Finally, the UDTPA claim

6    under North Carolina law should be dismissed because this Court has already found (and the

7    parties agreed) that California law governs this action, and even if North Carolina law applied,

8    GEA has failed to allege facts to support this claim.

9        **A.    GEA Fails to State a Claim for Misappropriation of Trade Secrets Under CUTSA.**

10       GEA's counterclaim for misappropriation of trade secrets fails on its face because it has

11   not identified its trade secrets with any specificity and its allegations do not support a plausible

12   misappropriation claim.[2] To state a claim under CUTSA, a plaintiff must allege "(1) the plaintiff

13   owned a trade secret, (2) the defendant acquired, disclosed, or used the plaintiff's trade secret

14   through improper means, and (3) the defendant's actions damaged the plaintiff." *CytoDyn of New*

15   *Mexico, Inc. v. Amerimmune Pharms., Inc.*, 160 Cal. App. 4th 288, 297 (2008). CUTSA defines a

16   trade secret as "information, including a formula, pattern, compilation, program, device, method,

17   technique, or process, that: (1) [d]erives independent economic value, actual or potential, from not

18   being generally known to the public or to other persons who can obtain economic value from its

19   disclosure or use; and (2) [i]s the subject of efforts that are reasonable under the circumstances to

20   maintain its secrecy." Cal. Civ. Code § 3426.1(d).

21       A plaintiff must "describe the subject matter of the trade secret with sufficient particularity

22

23   _____

24   [2] As pled, it is unclear whether GEA's misappropriation of trade secrets claim is under the
     California Uniform Trade Secrets Act (CUTSA) or the federal Defend Trade Secrets Act, 18

25   U.S.C. § 1836 (DTSA). Because the basis for GEA's counterclaims is diversity jurisdiction under
     28 U.S.C. § 1332, for purposes of this Motion, Salesforce assumes that GEA's misappropriation of

26   trade secrets counterclaim is governed by CUTSA. Regardless, courts have held that the DTSA
     and CUTSA share the same pleading requirements and therefore analyze the pleading

27   requirements together. *See Alta Devices, Inc. v. LG Elecs., Inc.*, 343 F. Supp. 3d 868, 880-881

28   (N.D. Cal. 2018).

to separate it from matters of general knowledge in the trade . . . to permit the defendant to ascertain at least the boundaries within which the secret lies." *Farhang v. Indian Inst. of Tech., Kharagpur*, No. C-08-2658, 2010 WL 2228936, at *13 (N.D. Cal. June 1, 2010) (citation omitted); *Altavion, Inc. v. Konica Minolta Sys. Lab., Inc.*, 226 Cal. App. 4th 26, 43-44 (2014) (quotations and citations omitted). The trade secret must be identified "with sufficient particularity to give defendants 'reasonable notice of the issues which must be met at the time of trial and to provide reasonable guidance in ascertaining the scope of appropriate discovery.'" *Farhang*, 2010 WL 2228936, at *13 (citation omitted).

### 1.    GEA does not identify any alleged trade secret with particularity.

GEA fails to state a claim under CUTSA because GEA's allegations fail to identify the trade secret with sufficient particularity. GEA's trade secrets are described in broad strokes:

> GEA's proprietary database, and the data contained therein, are trade secrets. The database tracks over 40 different data points related to past and future buyers, sellers, and business opportunities including prospective buyer contact information, price points, and purchasing habits. The database was created for the purpose of recording the identities of, and listing contact information for, the limited group of individuals who are, or who control, the potential buyers and sellers who are essential to success in the luxury real estate auction business.

Dkt. No. 58, Countercl., ¶ 34, *see also id.*¶ 36.

GEA identifies general categories of information like "data points related to past and future buyers, sellers, and business opportunities" (*id.* ¶ 34), information relating to "the identification of buyers and sellers, and other important information that is important in marketing to them" (*id.* ¶ 36). These sweeping, indiscriminate categories of information do not enable Salesforce to "ascertain at least the boundaries within which the trade secret lies." *Farhang*, 2010 WL 2228936, at *13; *Bladeroom Grp. Ltd. v. Facebook, Inc.*, No. 15-cv-01370-EJD, 2015 WL 8028294, at *3 (N.D. Cal. Dec. 7, 2015) (dismissing CUTSA claim where "[t]he allegations identifying the purported trade secrets are vague and conclusory, and consist of a generic list of categories of various types of information."); *Synopsys, Inc. v. AtopTech, Inc.*, No. 13-cv-02965-SC, 2013 WL 5770542, at *6 (N.D. Cal. Oct. 24, 2013) ("Plaintiff's complaint is too sweeping and vague for

Defendant to be on notice of what trade secrets are at issue and where the boundary between those secrets and general knowledge might lie."). Similarly, while GEA's Counterclaim refers to the information as "proprietary" (*see* Dkt. No. 58, Countercl. ¶¶ 5-7, 26, 31, 34, 43-44, 50, 73-74, 81), such conclusory and generalized allegations are insufficient to plead the existence of a trade secret. Here, as in *Bladeroom*, GEA's allegations identifying the purported trade secret are vague and conclusory and "consist of a generic list of categories of various types of information." 2015 WL 8028294, at *3. Because GEA's allegations do not describe the trade secret with sufficient particularity, GEA's trade secret misappropriation allegations are insufficient.[3]

### 2.     GEA fails to plausibly allege misappropriation by Salesforce.

Even if this Court were to find that GEA identified the existence of a trade secret with sufficient particularity, GEA's misappropriation of trade secrets claim still fails because GEA does not plausibly allege that Salesforce misappropriated any such trade secret. Under CUTSA, GEA must allege that Salesforce acquired, disclosed, or used the GEA's trade secret through improper means. *See CytoDyn*, 160 Cal. App. 4th at 297. Nowhere in GEA's Counterclaim does GEA tie any of its "trade secrets" to any alleged misappropriation by Salesforce. GEA alleges that "Salesforce misappropriated GEA's trade secrets by acquiring the GEA database for housing in accounts controlled by LeClair, using and disclosing the GEA database without GEA's consent and with knowledge[.]" Dkt. No. 58, Countercl. ¶ 39. But, GEA does not allege any fact that would support a remedy under CUTSA; it simply recites a conclusion, without reference to time, geography, or a particular defendant's actions. *See MedioStream, Inc. v. Microsoft Corp.*, 869 F.

---

[3] In addition, GEA has not complied with Section 2019.210 of the California Code of Civil Procedure, which provides, "[i]n any action alleging the misappropriation of a trade secret under the Uniform Trade Secrets Act . . . before commencing discovery relating to the trade secret, the party alleging the misappropriation shall identify the trade secret with reasonable particularity subject to any orders that may be appropriate under Section 3426.5 of the Civil Code." Section 2019.210 has been routinely applied in the Northern District of California where a party has alleged trade secret misappropriation claims. *See, e.g., Gatan, Inc. v. Nion Co.*, No. 15-cv-01862-PJH, 2018 WL 2117379, at *2 (N.D. Cal. May 8, 2018); *SocialApps, LLC v. Zynga, Inc.*, No. 4:11-cv-04910 YGR, 2012 WL 2203063, at *2 (N.D. Cal. June 14, 2012). GEA has shirked this obligation, and has neither specified its trade secrets in the Counterclaim nor provided an identification of its trade secrets pursuant to Section 2019.210.

Supp. 2d 1095, 1113 (N.D. Cal. 2012) (dismissing claim that "failed to identify, which, if any, of the trade secrets described in the complaint were encompassed in the [materials] obtained by [the defendant]").

GEA fails to allege any facts as to the alleged misappropriation because that act was done by LeClair with GEA's express consent. In particular, GEA does not allege how Salesforce allegedly acquired GEA's trade secrets. GEA fails to specify any individuals at Salesforce who purportedly misappropriated any trade secret and does not allege that Salesforce obtained the information by improper means. There are no allegations that address Salesforce's alleged use of GEA's trade secrets. GEA alleges that Salesforce "used and disclosed" GEA's trade secrets but the allegations are completely silent as to which of GEA's purported trade secrets Salesforce allegedly used and disclosed. GEA has not pled facts sufficient to place the Court or Salesforce on notice of the specific trade secrets that it alleges that Salesforce has used or disclosed. All of these allegations not only lack specificity, but are also conclusory. Conclusory allegations such as those alleged by GEA are not sufficient to state a claim. *Epstein*, 83 F.3d at 1140.

Finally, GEA's failure to allege which trade secrets were supposedly used by Salesforce strongly suggests that GEA's Counterclaim amounts to mere speculation without any good faith basis. GEA has "failed to allege facts providing a reasonable basis for this Court to infer that [Salesforce] improperly used [its] trade secrets, and thus, [has] 'failed to raise a right to relief above the speculative level.'" *Space Data Corp. v. X*, No. 16-cv-03260-BLF, 2017 WL 5013363, at *2 (N.D. Cal. Feb. 16, 2017) (citation omitted). Because GEA fails to plausibly allege a trade secret or misappropriation by Salesforce of a trade secret under CUTSA, this counterclaim should be dismissed.

**B.      GEA's Second, Third, Fifth, Sixth, Seventh, Eighth Counterclaims Fail Because They are Superseded by CUTSA.**

The counterclaims for conversion, negligence, intentional interference with contractual relations, intentional interference with prospective economic advantage, conspiracy and aiding and abetting (conversion), and conspiracy and aiding and abetting (misappropriation of trade secrets) also fail to state a claim because they are superseded by CUTSA. CUTSA has a "comprehensive

1   structure and breadth." *K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.*, 171 Cal.

2   App. 4th 939, 953 (2009). CUTSA supersedes any common law claim "based on the same nucleus

3   of facts as the misappropriation of trade secrets claim for relief." *Id.* at 958 (citation omitted).

4   Regardless of how a party characterizes its cause of action, California courts look to the gravamen

5   of the claim to determine whether it would be based on the "same nucleus of facts as the

6   misappropriation of trade secrets claim for relief." *Id.* (holding claim for interference with contract

7   superseded by CUTSA); *Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 236 (2010)

8   (holding claim for conversion superseded); *see also Bus. Sols., LLC v. Ganatra*, No. SA CV 18-

9   1426-DOC (KESx), 2019 WL 926351, at *8-9 (C.D. Cal. Jan. 7, 2019) (finding aiding and

10  abetting and interference with contractual relations claims superseded by CUTSA); *ATS Prods.,*

11  *Inc. v. Champion Fiberglass, Inc.*, No. 13-cv-02403-SI, 2015 WL 224815, at *1 (N.D. Cal. Jan.

12  15, 2015) (finding conspiracy to misappropriate trade secrets and aiding and abetting claims

13  superseded by CUTSA); *RSPE Audio Sols., Inc. v. Vintage King Audio, Inc.*, No. CV 12-06863

14  DDP (PJWx), 2013 WL 100178, at *2-3 (C.D. Cal. Jan. 7, 2013) (finding intentional interference

15  with prospective economic advantage and aiding and abetting misappropriation of trade secrets

16  claims superseded by CUTSA).

17          Under the nucleus of facts test, CUTSA supersedes GEA's tort counterclaims. These

18  claims rely on the same set of operative facts as GEA's misappropriation of trade secrets

19  counterclaim and must therefore be dismissed. GEA's misappropriation of trade secrets

20  counterclaim is based on the allegation that Salesforce "misappropriated," "us[ed] and disclos[ed]

21  the GEA database without GEA's consent" "to [Salesforce's] benefit and the benefit of LeClair

22  and LAMI, and denied GEA access to the database." Dkt. No. 58, Countercl. ¶¶ 39, 41. GEA's

23  counterclaims for conversion, negligence, intentional interference with contractual relations,

24  intentional interference with prospective economic advantage, conspiracy and aiding and abetting

25  fail because GEA's allegations amount to "no more than a restatement of the same operative facts

26  supporting trade secret misappropriation." *MedioStream*, 869 F. Supp. at 1116.

27          For example, GEA's conversion counterclaim relies on allegations that Salesforce

28  "improperly prevent[ed] GEA from accessing the database" (Dkt. No. 58, Countercl. ¶ 44), which

10

stems from the same nucleus of facts as the misappropriation of trade secrets counterclaim.

Similarly, the allegations for GEA's negligence counterclaim rely on Salesforce's refusal to

"correct its improper elimination of GEA's access to the database." Id. ¶ 52. In the same vein, the

intentional interference with contractual relations and the intentional interference with prospective

economic advantage rely on GEA's allegations regarding access to its database. Compare

"Salesforce refused . . . to restore GEA's access to its database" (id. ¶ 60) with "Salesforce ratified

the actions of all the employees involved in the denial by Salesforce of GEA's access to its

database." Id. ¶ 70. In short, GEA's tort counterclaims (for conversion, negligence, intentional

interference with contractual relations, intentional interference with economic advantage,

conspiracy and aiding and abetting) are based on Salesforce's alleged misappropriation of GEA's

trade secrets and GEA's inability to access the database. Because GEA's tort claims are based on

the exact "same nucleus of facts" as the misappropriation of trade secrets claim, they are

superseded by CUTSA and should be dismissed with prejudice.

> **C.    GEA's Second, Third, Fifth, Sixth, Seventh, and Eighth Counterclaims are Improperly Pled as Tort Claims and Should be Dismissed.**

GEA's counterclaims for conversion, negligence, intentional interference with contractual

relations, intentional interference with prospective economic advantage, conspiracy and aiding and

abetting (conversion) should also be dismissed because GEA fails to allege an independent duty

arising from principles of tort law to support these claims. Instead, GEA improperly relies on

alleged breaches of contractual duties purportedly owed under the MSA to support each of these

claims.

California law prohibits a party to recover in tort for breach of duties that arise from a

contract. *JRS Prods., Inc. v. Matsushita Elec. Corp. of Am.*, 115 Cal. App. 4th 168, 183 (2004)

(holding that a "breach of contract claim cannot be transmuted into tort liability by claiming that

the breach interfered with the promisee's business"); *see also Roots Ready Made Garments v.

Gap, Inc.*, No. 07-03363, 2007 WL 3045999, at *4 (N.D. Cal. Oct. 18, 2007) (holding that

California law does not allow "a plaintiff . . . [to] simply present evidence of a breach of contract

and use the same activity to recover tort damages under a theory of . . . interference"); *Quantum*

*Assocs., Inc. v. Symbol Techs., Inc.*, No. 01-02789, 2002 WL 1735356, at *1-2 (N.D. Cal. July 12, 2002) ("[T]he wrongful conduct, that is, the acts of interfering with the relationship, must be more than a breach of contract). Instead, courts will enforce breach of a contractual promise through contract law and reject improper efforts to recast contract claims as tort claims. *BFGC Architects Planners, Inc. v. Forcum/Mackey Constr., Inc.*, 119 Cal. App. 4th 848, 853 (2004) ("A person may not ordinarily recover in tort for the breach of duties that merely restate contractual obligations.") (citations omitted).

Here, GEA's counterclaims for conversion, negligence, intentional interference with contractual relations, intentional interference with prospective economic advantage, conspiracy and aiding and abetting fail because GEA's allegations arise directly from activities relating to the license agreement between GEA and LAMI and not from any alleged misconduct by Salesforce under the MSA.

As detailed below, GEA's breach of contract claim alleges that Salesforce "materially breached the [MSA] by improperly removing Leslie Farkas as the billing contact and depriving GEA of access to the account" and that Salesforce "further breached the contract by refusing to restore access to GEA." Dkt. No. 58, Countercl. ¶ 57. Identical allegations form the basis of GEA's conversion, negligence, intentional interference with contractual relations, intentional interference with prospective economic advantage, conspiracy and aiding and abetting claims. For example, GEA's conversion claim is based on Salesforce "improperly preventing GEA from accessing the database" and "refusing to restore GEA's access to the database." *Id.* ¶ 44. Similarly, GEA's negligence counterclaim is based on Salesforce "replac[ing] GEA's billing contact" and refusal to "correct its improper elimination of GEA's access to the database." *Id.* ¶ 52. GEA's intentional interference with contractual relations counterclaim is based on alleged refusal by Salesforce "to restore GEA's access to its database and Salesforce account" and failure to "compl[y] with GEA's demands for access to the database." *Id.* ¶¶ 60, 62. GEA's intentional interference with prospective economic advantage counterclaim is also based on the alleged "denial by Salesforce of GEA's access to its database." *Id.* ¶ 70. Likewise, GEA's conspiracy and aiding and abetting counterclaims are based on the same allegations that "Salesforce ratified the

actions of all the employees involved in the denial by Salesforce of GEA's access to its database." *Id.* ¶ 76. None of these allegations relate to any purported breach of any duty by Salesforce under the MSA.

Because the tort claims (for conversion, negligence, intentional interference with contractual relations, intentional interference with prospective economic advantage, conspiracy and aiding and abetting) are contract claims improperly plead as tort claims, they should be dismissed with prejudice.

### D.   GEA's Second, Third, Fifth, Sixth, Seventh, Eighth, and Ninth Counterclaims Fail to State a Claim.

In addition to the reasons above, each counterclaim fails on independent grounds and should be dismissed.

#### 1.   GEA Fails to State a Claim for Conversion

GEA alleges that "Salesforce intentionally and substantially interfered with GEA's possession and control of its proprietary database by itself exercising dominion and control over the database, by improperly preventing GEA from accessing the database, and by refusing to restore GEA's access to the database." Dkt. No. 58, Countercl. ¶ 44. This is insufficient to state a conversion claim to survive a motion to dismiss. To state a claim for conversion, a plaintiff must show "(1) the plaintiff's ownership or right to possession to the property at the time of conversion; (2) the defendant's conversion by a wrongful act; and (3) damages." *Ross v. United States Bank Nat'l Ass'n*, 542 F. Supp. 2d 1014, 1023-24 (N.D. Cal. 2008). GEA fails to allege any facts showing that Salesforce ever exercised dominion or control over GEA's database or otherwise "applied the property to [its] own use," and thus, the conversion counterclaim should be dismissed. *See Mindy's Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 601 (9th Cir. 2010) (quoting *Oakdale Vill. Grp. v. Fong*, 43 Cal. App. 4th 539, 544 (1996) (noting conversion claim requires "an assumption of control or ownership over the property, or that the alleged converter has applied the property to his own use")). Further, GEA fails to allege any wrongful act by Salesforce in support of its conversion counterclaim.

#### 2.   GEA Fails to State a Claim for Negligence

Similarly, GEA's allegations in support of its negligence counterclaim are insufficient to

13

state a claim and should be dismissed. GEA alleges that Salesforce was negligent because GEA

placed its trust in Salesforce and that "Salesforce repeatedly breached that trust, failed to live up to

its own standards for safeguarding the data of its customers, and grossly departed from the

standards that would be followed by a company entrusted with the responsibility with protecting

highly sensitive and valuable business information." Dkt. No. 58, Countercl. ¶ 50. To establish a

claim for negligence, a plaintiff must allege (1) a legal duty of care, (2) breach of that duty, and (3)

that the breach is the proximate cause of the resulting harm. *Ladd v. Cty. of San Mateo*, 12 Cal. 4th

913, 917 (1996). GEA's negligence claim fails on its face because (1) GEA has failed to allege

that Salesforce owed a duty of care to GEA outside of the bounds of the MSA and has failed to

allege any facts to show that there was any duty that Salesforce owed that was not governed by the

MSA; (2) there are no allegations that Salesforce breached any such purported duty; and (3) GEA

fails to allege the alleged breach of Salesforce's alleged duty of care owed to GEA was the

proximate cause of the harm to GEA. GEA cannot turn an alleged breach of contract claim into a

negligence claim. GEA's negligence counterclaim fails and should be dismissed.

### 3.  GEA Fails to State a Claim for Intentional Interference with Contractual Relations

GEA's counterclaim for intentional interference with contractual relations is also deficient

and fails to state a claim. GEA alleges that Salesforce knew, or should have known, of the terms of

the LAMI license agreement and alleges that Salesforce interfered with GEA's contractual

relationship when Salesforce "refused to recognize GEA's rights as shown by the LAMI License,

and refused to restore GEA's access to its database and Salesforce account[.]" Dkt. No. 58,

Countercl. ¶ 60. "The elements which a plaintiff must plead to state the cause of action for

intentional interference with contractual relations are (1) a valid contract between plaintiff and a

third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to

induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the

contractual relationship; and (5) resulting damage." *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*,

50 Cal. 3d 1118, 1126 (1990).

GEA's allegations are insufficient to plead this counterclaim. GEA alleges that Salesforce

1   "knew or should have known" that GEA had an agreement with LAMI, but this allegation is

2   insufficient to show that Salesforce *knew* about the LAMI license agreement. GEA fails to allege

3   that Salesforce's actions were in any way "designed to induce a breach or disruption of the

4   contractual relationship." *Id.* at 1126. Similarly, GEA fails to allege that there was any actual

5   breach or disruption of any contractual relationship between GEA and LAMI due to Salesforce's

6   actions. To the contrary, the Counterclaim alleges that LeClair and LAMI—not Salesforce—took

7   control of the database (Dkt. No. 58, Countercl. ¶ 77) well before Salesforce received the LAMI

8   license agreement. And the LAMI license granted a license to the Salesforce database to LAMI,

9   which LeClair controlled. Nothing in the LAMI license obligated Salesforce to take any action,

10  and there is no allegation that Salesforce engaged in any conduct to interfere with either party'

11  rights under the LAMI license agreement. Indeed, the agreement is not attached to the

12  Counterclaim and no provisions of the agreement are cited. This is, in short, not a solicitation case

13  that would give rise to a claim for intentional interference with contract, and GEA's twisted

14  allegations do not satisfy the most basic elements of this claim. Finally, GEA's allegations

15  regarding damages caused by the alleged interference by Salesforce are conclusory and lack

16  specificity. For these reasons, GEA's counterclaim for intentional interference with contractual

17  relations should be dismissed with prejudice.

18
19
####     4.     GEA Fails to State a Claim for Intentional Interference with Prospective Economic Advantage

20          Likewise, GEA's allegations in support of its counterclaim for intentional interference with

21  prospective economic advantage fail to state a claim. GEA alleges that "Salesforce knew, and a

22  reasonable person . . . would have known, of [GEA's economic relationships]" and "that

23  disruption of GEA's relationships was substantially certain to occur if GEA's access to its

24  database was not restored." Dkt. No. 58, Countercl. ¶¶ 67-68. "Intentional interference with

25  prospective economic advantage has five elements: (1) the existence, between the plaintiff and

26  some third party, of an economic relationship that contains the probability of future economic

27  benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentionally

28  wrongful acts designed to disrupt the relationship; (4) actual disruption of the relationship; and (5)

economic harm proximately caused by the defendant's action." *Roy Allan Slurry Seal, Inc. v. Am. Asphalt S., Inc.*, 2 Cal. 5th 505, 512 (2017). First, GEA's allegations are conclusory and lack any facts to support that there was any economic relationship between GEA and a third party with the "probability of future economic benefit" to GEA. *Id.* at 509. Second, GEA's conclusory allegations do not allege any facts to support that Salesforce knew of any relationship between GEA and some third party, let alone that Salesforce engaged in any wrongful acts that disrupted this purported relationship. GEA's allegations also fail to allege any actual disruption of GEA's purported relationship with a third party and the allegations as to the economic harm allegedly caused by Salesforce's actions are conclusory and lack any facts. For these independent reasons, GEA's counterclaim for intentional interference with prospective economic advantage should be dismissed.

### 5.   GEA Fails to State a Claim for Conspiracy and Aiding and Abetting

Similarly, GEA's seventh and eighth counterclaims, for conspiracy and aiding and abetting (conversion), and for conspiracy and aiding and abetting (misappropriation of trade secrets), fail to state a claim. GEA alleges that Salesforce "knew of the conversion of the GEA database by LeClair and LAMI," "agreed to cooperate in carrying out LeClair's and LAMI conversion," and "actively and substantially assisted LeClair and LAMI." Dkt. No. 58, Countercl. ¶ 76. GEA further alleges that "Salesforce and LeClair and LAMI nonetheless agreed to cooperate in carrying out LeClair's and LAMI's misappropriation of GEA's trade secrets, and Salesforce actively and substantially assisted LeClair and LAMI." *Id.* ¶ 87.[4]

Under California law, the elements of conspiracy are "the formation and operation of the conspiracy, wrongful acts or acts done pursuant thereto, and damage." *Tagtrends, Inc. v. Nordstrom, Inc.*, No. SACV1300563JVSJPRX, 2013 WL 12126741, at *6 (C.D. Cal. Aug. 15, 2013). Aiding and abetting occurs when the party "(1) knows of the breaching conduct and gives

---

[4] As an initial matter, California courts have held that conspiracy is not an independent cause of action under California law, but rather a theory of liability, so this claim should be dismissed on this basis alone. *See IIG Wireless Inc. v. Yi*, 22 Cal. App. 5th 630, 652 (2018) ("Conspiracy is not a separate tort, but a form of vicarious liability by which one defendant can be held liable for the acts of another.").

substantial assistance or encouragement to the primary actor; or (2) gives substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the third person." *Id.* (dismissing aiding and abetting and conspiracy claims where plaintiff failed to allege defendant knowingly provided substantial assistance and failed to plead any formation or operation of a conspiracy).

Here, GEA's conspiracy and aiding and abetting counterclaims fail because GEA fails to state a claim for either conversion or misappropriation of trade secrets, as set forth above. GEA fails to allege that Salesforce ever formed or operated a conspiracy with LeClair or LAMI. GEA's allegations are conclusory and lack facts to support that Salesforce gave substantial assistance or encouragement to LeClair or LAMI in the commission of an intentional tort. For these independent reasons, GEA's counterclaims for conspiracy and aiding and abetting (conversion), and for conspiracy and aiding and abetting (misappropriation of trade secrets), should be dismissed.

### E.   GEA Fails to State a Claim for Breach of Written Contract.

Putting aside the fact that the MSA is not an adhesion contract provided to customers on a take-it-or-leave it basis, GEA has failed to state a valid claim for breach of written contract because the Counterclaim fails to allege any facts showing that Salesforce breached the terms of the MSA. Dkt. No. 58, Countercl. ¶¶ 55-58. To state a breach of contract claim, a plaintiff must allege "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011).

Here, GEA alleges that Salesforce breached the MSA by "removing Leslie Farkas as the billing contact," "depriving GEA of access to the account," and failing to restore GEA's access to the account. Dkt. No. 58, Countercl. ¶ 57. GEA's conclusory allegations fail on their face to state a claim for breach of contract against Salesforce. First, GEA does not allege that Salesforce failed to provide the agreed upon CRM software and services to GEA under the MSA. Second, GEA fails to point to any specific provision of the MSA where removing an individual as the billing contact constitutes a breach. Third, GEA alleges that "[a]s a direct and proximate result of Salesforce's

17

breach of the contract" that it was "damaged in an amount in excess of $75,000" but provides no facts to support this claim. *Id.* ¶ 58.

The heart of GEA's breach of contract claim stems from LeClair's actions and the purported breach of GEA and LAMI's license agreement, not the MSA. GEA has not and cannot allege any breach of the MSA by Salesforce. LeClair's conduct and the license agreement between GEA and LAMI form the basis for all of the alleged conduct giving rise to GEA's breach of contract claim (*id.* ¶¶ 8-9) and the breach of contract claim is nothing more than a misguided attempt to force Salesforce into paying damages for the conduct of GEA's licensee that it knowingly and willingly chose. Finally, Salesforce was never a party to the license agreement between LAMI and GEA and thus, the breach of contract claim against Salesforce for any alleged conduct related to that license agreement is improper. For all these reasons, this Court should dismiss GEA's breach of contract claim for failure to state a claim.

### F.      GEA Fails to State a Claim under North Carolina's Unfair and Deceptive Trade Practices Act

GEA's ninth and final counterclaim alleging violation of North Carolina's Unfair and Deceptive Trade Practices Act fails as a matter of law. This claim is improper because California law applies to this action. Even if North Carolina law applied, GEA has failed to state a claim.

As an initial matter, GEA cannot state a claim under North Carolina law because it has waived any argument that North Carolina law applies to this action. *Wood v. Milyard*, 566 U.S. 463, 470 n.4 (2012) ("A waived claim or defense is one that a party has knowingly and intelligently relinquished[.]"); *Salyers v. Metro. Life Ins. Co.*, 871 F.3d 934, 938 (9th Cir. 2017) ("A waiver occurs when 'a party intentionally relinquishes a right' or 'when that party's acts are so inconsistent with an intent to enforce the right as to induce a reasonable belief that such right has been relinquished.'") (citation omitted). At oral argument, GEA conceded that California law applies to this case pursuant to the terms of the MSA. Dkt. No. 42-1, Ex. E, (Tr. of August 8, 2019 Hrg. 8:24-9:4). GEA cannot now claim that North Carolina law applies because it has waived that argument in this case by asserting that California, not North Carolina, law applies.

Even absent waiver, GEA cannot state a claim under North Carolina law because

California law governs this action. The clear terms of the MSA provide that "any lawsuit arising out of or in connection with this Agreement" is governed by California law, with courts in San Francisco, California having exclusive jurisdiction. *See* Dkt. No. 1-1 at 14, § 13.1. Moreover, this Court has already found that California law applies to this matter.[5] Dkt. No. 45 at 4. Thus, even if the MSA's governing law provision did not apply, this Court in its discretion should apply the law of the case doctrine to preclude the application of North Carolina law. *See Hall v. City of Los Angeles*, 697 F.3d 1059, 1067 (9th Cir. 2012) (finding that the law of the case doctrine "generally precludes a court from reconsidering an issue decided previously by the same court or by a higher court in the identical case") (citation omitted).

But, even if North Carolina law applied, GEA fails to state a claim for violation of the UDTPA. To state a valid claim under the UDTPA, a plaintiff must allege "(1) an unfair or deceptive act or practice; (2) in or affecting commerce, and (3) which proximately caused injury to plaintiffs." *Walker v. Fleetwood Homes of N.C., Inc.*, 362 N.C. 63, 71-72 (2007); N.C.G.S. § 75-1.1. "Acts are deceptive when they possess the tendency or capacity to mislead, or create the likelihood of deception." *Belk, Inc. v. Meyer Corp., U.S.*, 679 F.3d 146, 164 (4th Cir. 2012) (applying North Carolina law) (cleaned up). An act is unfair "when it offends established public policy," and is "immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Carcano v. JBSS, LLC*, 200 N.C. App. 162, 172 (2009) (quotation and emphasis omitted); *Rahamankhan Tobacco Enters. Pvt. Ltd. v. Evans MacTavish Agricraft, Inc.*, 989 F. Supp. 2d 471, 477 (E.D.N.C. 2013). To satisfy the proximate cause element under the UDTPA, a plaintiff must prove detrimental reliance and must prove both actual and reasonable reliance. *Solum v. Certainteed Corp.*, 147 F. Supp. 3d 404, 411 (E.D.N.C. 2015) (quotations and citations omitted). UDTPA claims alleging detrimental reliance on false or deceptive representations are subject to Rule 9(b)'s heightened standard and must sufficiently describe "the time, place, and contents of the false representations, as well as the identity of the person making the

---

[5] This Court also noted that the parties agreed that California law applies. Dkt. No. 45 at 4 (citing Dkt. No. 42 at 8 n.1, Dkt No. 42-1 at 35-36).

1  misrepresentation and what he obtained thereby." *Topshelf Mgmt., Inc. v. Campbell-Ewald Co.*,

2  117 F. Supp. 3d 722, 725, 731 (M.D.N.C. 2015) (quoting *U.S. ex rel. Wilson v. Kellogg Brown &*

3  *Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008)).

4        GEA cannot state a claim under the UDTPA and this claim should be dismissed. In fact,

5  GEA cannot even satisfy the first element to state a UDTPA claim. GEA's UDTPA claim is

6  premised on a purported "false assertion by Salesforce that it follows a policy precluding

7  restoration of access to the rightful owner of an account and the information associated with the

8  account" (Dkt. No. 58, Countercl. ¶ 94) but this falls woefully short of the heightened pleading

9  requirements under Rule 9(b). GEA alludes to a few statements made by Salesforce employees

10 (Dkt. No. 58, Countercl. ¶ 96), but these vague allegations fail to describe "the time, place, and

11 contents of the false representations, as well as the identity of the person making the

12 misrepresentation and what he obtained thereby." *Topshelf Mgmt.*, 117 F. Supp. 3d at 725; *see*

13 *also Cross v. Ciox Health, LLC*, No. 4:19-CV-7-FL, 2020 WL 534289, at *7 (E.D.N.C. Feb. 3,

14 2020) (granting motion to dismiss UDTPA claim where complaint described "various types of

15 representations, but none with particularity"). Further, the allegations regarding Salesforce's

16 purported unfair acts or practices fail to describe any act or practice that is "immoral, unethical,

17 oppressive, unscrupulous, or substantially injurious to consumers" with any particularity.

18 *Rahamankhan*, 989 F. Supp. 2d at 477.

19       Second, while GEA's allegations may satisfy the second element of a UDTPA claim that

20 Salesforce's conduct was "in or affecting commerce," GEA still fails to state a claim because it

21 must meet all three requirements. GEA does not expressly allege that the alleged conduct by

22 Salesforce affected commerce, but courts applying North Carolina law will look to where the

23 business bringing the claim is "in the marketplace acting as a consumer or is otherwise engaged in

24 commercial dealing" with the other party. *See Exclaim Mktg., LLC v. DirecTV, LLC*, 134 F. Supp.

25 3d 1011, 1020 (E.D.N.C. 2015). Even if this element is satisfied, GEA cannot meet the first or

26 third prong of a valid UDTPA claim.

27       Third, GEA fails to plead actual and reasonable reliance to satisfy the proximate cause

28 requirement. GEA alleges that it has been damaged as "a direct and proximate result of

20

1    Salesforce's conduct" (Dkt. No. 58, Countercl. ¶ 103), and that Salesforce's "false assertion"

2    "caused harm to GEA that could have been avoided," *id.* ¶ 94. But "threadbare recitals of the

3    elements of a cause of action, supported by mere conclusory statements, do not suffice." *Twombly*,

4    550 U.S. at 555. GEA's allegations fail to state any facts supporting any conclusion that it relied

5    on Salesforce's alleged misrepresentation or that this reliance caused any injury to GEA.

6    Moreover, as with the other counterclaims, GEA's grievances stem from LeClair's actions, not

7    Salesforce's, and LeClair's actions were the proximate cause of any injuries suffered by GEA.

8           Finally, GEA cannot rely on its other counterclaims to support its UDTPA claim because

9    (1) the counterclaims fail to allege "aggravating circumstances" necessary to support a UDTPA

10   claim, and (2) GEA cannot make a *prima facie* case for the underling common law tort claims. For

11   example, GEA cannot use its breach of contract as a basis for its UDTPA claim because GEA does

12   not allege "[e]gregious or aggravating circumstances." *Ellis v. Louisiana-Pac. Corp.*, 699 F.3d

13   778, 787 (4th Cir. 2012) (applying North Carolina law); *Rahamankhan*, 989 F. Supp. 2d at 478

14   (noting breach of contract alone is insufficient to state UDTPA claim). Similarly, GEA's trade

15   secret misappropriation counterclaim and common law tort counterclaims are insufficient bases

16   for a UDTPA claim. *See, e.g.*, *Legacy Data Access, LLC v. MediQuant, Inc.*, No. 3:15-cv-00584-

17   FDW-DSC, 2017 WL 6001637, at *16  (W.D.N.C. Dec. 4, 2017) (noting North Carolina law

18   suggests that there is no per se rule that trade secret misappropriation in North Carolina is an

19   unfair or deceptive act or practice as a matter of law); *Rogers v. Keffer, Inc.*, 243 F. Supp. 3d 650,

20   661 (E.D.N.C. 2017) (finding defendant's negligence insufficient to constitute an unfair or

21   deceptive trade practice); *Global Hookah Distribs., Inc. v. Avior, Inc.*, 401 F. Supp. 3d 653, 663

22   (W.D.N.C. 2019) (noting conversion does not create a UDTPA claim absent "sufficient

23   aggravating factors"). And even if the counterclaims for tortious interference with a contract or

24   other counterclaims constituted "aggravating circumstances" to support a UDTPA claim, because

25   GEA has failed to plead the underlying torts, GEA cannot use these counterclaims as bases for its

26   UDTPA claim. *See, e.g.*, *Fen-Phen Series 2005-01 v. James Farrin, P.C.*, No. 1:09CV479, 2010

27   WL 9109369, at *1 (M.D.N.C. July 19, 2010) (dismissing UDTPA claim where plaintiff did not

28   sufficiently allege underlying tortious interference with contract claim); *Market Choice, Inc. v.*

*New England Coffee Co.*, No. 5:08-CV-90, 2009 WL 2590651, at *10 (W.D.N.C. Aug. 18, 2009) (dismissing UDTPA claim in part, where plaintiff failed to allege underlying interference with prospective economic advantage claim); *Combs & Assocs. v. Kennedy*, 147 N.C. App. 362, 374 (2001) (finding plaintiff failed to state a UTDPA claim where underlying claims for misappropriation of trade secrets, tortious interference with contract and civil conspiracy failed to state a claim). For these independent reasons, GEA's counterclaim alleging a violation of North Carolina's UDTPA should be dismissed.

## V.        CONCLUSION

For the reasons set forth above, the Court should grant Salesforce's Motion to Dismiss GEA's counterclaims with prejudice.

Dated:  July 13, 2020                              DLA PIPER LLP (US)


                                                  By:  */s/ Robert Nolan*
                                                         ROBERT NOLAN
                                                         Attorneys for Plaintiff
                                                         salesforce.com, inc.